**CABLE NEWS NETWORK L.P., L.L.L.P., Plaintiff,**

**v.**

**CNNEWS.COM, Defendant.**

No. 00–2022–A.

United States District Court, E.D. Virginia, Alexandria Division.

Dec. 21, 2001.

Janis R. Orfe, The Law Offices of Janis Orfe, P.C., Fairfax, VA, for Plaintiff.

Paul Edward Dietze, Pennie & Edmonds, Washington, D.C., for Defendant.

### MEMORANDUM OPINION

ELLIS, District Judge.

This is an *in rem* ACPA[1] suit brought by an American company against a domain name used by a Chinese company in connection with a website that focuses chiefly on China and Chinese speakers by providing online services in the Chinese language. At issue on cross-motions for summary judgment are the following questions:

(1) whether this suit meets the ACPA's procedural requirements for an *in rem* action;

(2) whether the existing record establishes as a matter of law that plaintiff has proven the substantive elements of trademark infringement under 15 U.S.C. § 1125(a);

(3) whether the existing record establishes as a matter of law that plaintiff has proven the substantive elements of trademark dilution under 15 U.S.C. § 1125(c);

(4) whether a plaintiff in an ACPA *in rem* suit must prove that the registrant or user of the offending domain name acted in bad faith and, if so, whether that bad faith is established as a matter of law on the existing record;

(5) whether due process is violated by transferring ownership of a ".com" domain name from a Chinese company to an American company where,

---

1. Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d).

as here, the domain name is used in connection with a website purporting to focus only on residents of China, but the domain name's situs is in this district; and

(6) whether an ACPA *in rem* action brought in this district by an American plaintiff against a domain name registered and used by Chinese entities doing business solely in China should be dismissed on *forum non conveniens* grounds where, as here, the disputed domain name's situs is in this district.

## I.

Plaintiff, Cable News Network L.P., L.L.L.P., is a Delaware limited liability limited partnership with its principal place of business in Atlanta, Georgia. It is engaged in the business of providing news and information services throughout the world via a variety of electronic media. It is also the owner of the trademark "CNN," which plaintiff has registered in this country,[2] as well as in China.[3] Since at least 1980, plaintiff has used its registered CNN trademark in connection with providing news and information services to people worldwide through a variety of cable and satellite television networks, private networks, radio networks, websites, and syndicated news services. Since adopting the CNN mark, plaintiff has used the mark "CNN" in the names of all of its broadcast networks, the best known of which include CNN Headline News, CNN En Espanol, CNNSI, CNNFN, and CNN International ("CNNI").[4] Some of these services are accessible in China and are provided in the Chinese language.[5] Plaintiff's services are also accessible worldwide via the Internet at the domain name "cnn.com."[6] In light of

2. Plaintiff has numerous trademark registrations from the United States Patent and Trademark Office for various marks consisting in whole or in part of the name "CNN." *See, e.g.*, U.S. Reg. No. 1,587,839.

3. Plaintiff has registered a variety of marks that comprise and include the "CNN" mark. *See, e.g.*, China Reg. No. 781861. These registrations predate the registration and use of the cnnews.com domain name.

4. Launched in 1985, CNNI is a global twenty-four hour news network that can be seen in more than 160 million television households in 212 nations. Since September 1997, CNNI has been divided into six regional editions, including "CNNI Asia Pacific," which is broadcast to more than 20 million subscribers in Asia, including China and Taiwan. Plaintiff boasts forty-three news bureaus (including bureaus located in Beijing, Hong Kong, Bangkok, New Delhi, Seoul, and Tokyo) and more than 4,000 news professionals in the field.

5. Plaintiff has supplied the record with numerous studies indicating that members of the Chinese business community are familiar with the CNN mark. Also included are numerous news articles from Chinese English-language publications further evidencing plaintiff's popularity in China and throughout Asia.

6. Cnn.com provides news to users worldwide. For many years, cnn.com has offered a sub-site, linked to and affiliated with, the main cnn.com website, that contains detailed news and information of interest to residents of Asia. In 1998, this sub-site was labeled "Asia-Now" and then, in early 2000, was changed to "cnn.com/asia." For years, cnn.com Asian interest sites have offered a broad range of news and information regarding China and Hong Kong, including news, sports, weather, business, and travel information. Furthermore, commencing in February 2000, plaintiff, through the cnn.com website, offered Internet headline news in Chinese for a limited period of time. While plaintiff does not currently provide this service, it is actively engaged in negotiating with translators to re-establish this service. As a result of the plethora of information on the cnn.com website targeted toward Asians, including Chinese-speaking individuals, the undisputed record reflects that the site has enjoyed substantial popularity, averaging more than 7.4 million page impressions or "hits" per month for the cnn.com/asia website over the first eight months of 2001. It is also clear that a not

plaintiff's longstanding, prominent, and worldwide use of the CNN mark, there is little doubt, and the parties do not dispute, that the CNN mark is well-known throughout Asia, including China.

Maya Online Broadband Network (HK) Co. Ltd. ("Maya HK") is a Chinese company that is a subsidiary of a second Chinese company, Shanghai Online Broadband Network Co. Ltd. ("Shanghai Maya"). The Chinese Internet Service Provider Tom.com owns a controlling share of Shanghai Maya's stock. On November 12, 1999, Maya HK's general manager, Heyu Wang, listing himself as registrant, registered the domain name "cnnews.com" with Network Solutions, Inc. ("NSI"), a domain name registrar and registry[7] located in Herndon, Virginia.[8] Maya HK, Wang's employer and the respondent in this action, subsequently licensed the cnnews.com domain name to its parent company, Shanghai Maya. Under the terms of the licensing agreement between Maya HK and Shanghai Maya, Maya HK earns royalties from Shanghai Maya's use of the cnnews.com domain name.

The cnnews.com website was designed and operated by Shanghai Maya to provide news and information to Chinese-speaking individuals worldwide. This website is part of Shanghai Maya's comprehensive online services system that includes video on demand, broadband services, and a variety of e-business services. The cnnews.com website is one of many sites, including cnnav.com and cnsport.com, that are linked to Shanghai Maya's main website, cnmaya.com. The cnmaya.com website makes significant use of the terms "cnnews" and "cnnews.com" as brand names, including use of logos that plaintiff contends resemble its logos. Furthermore, among the news articles posted on the cnnews.com and cnmaya.com websites are numerous articles that reference plaintiff's mark and its news reports and stories.

Early in this litigation, Maya HK asserted that cnnews.com stands for "China News" because the characters "cn" are widely used and understood to be an abbreviation for the country name "China" and "cn" is the top-level Internet domain for China.[9] More recently, Shanghai Maya has admitted that "cnnews" in fact stands for "China Network News," the abbreviation for which is "CNN." It appears, therefore, that Shanghai Maya in-

insubstantial number of Chinese residents access cnn.com by circumventing Chinese government Internet controls through the use of proxy servers.

7. The functions of a "registrar" and "registry" are distinct. A registry "is the single official entity that maintains all official records regarding registrations in the TLD (top-level domain)...." *FleetBoston Financial Corp. v. FleetBostonFinancial.com*, 138 F.Supp.2d 121, 123 n. 2 (D.Mass.2001) (internal citations and quotation marks omitted). Thus, there is only one official registry for each TLD, such as ".com," ".org," and ".edu." By contrast, a registrar "is one of several entities, for a given TLD, that is authorized by ICANN [Internet Corporation for Assigned Names and Numbers] to grant registration of domain names to registrants." *Id.*

8. At that time, NSI served as both registrar and registry for all ".com" domain names, including cnnews.com. NSI has since been acquired by Verisign Global Registry Services ("Verisign"), also located in Herndon, Virginia. Verisign continues to operate as one of a number of domain name registrars and is the sole and exclusive registry for certain TLDs, including the TLD ".com."

9. Other non-Maya-affiliated websites in China that use the "cn" prefix are news- or information-related, including cnnctv.com (China National Communication and Television Net), cnnac.com (China Network and Communication), cnnettv.net (China Network TV Net).

tends consumers to view the cnnews.com domain name as including the CNN mark in the form of "cnn-news.com," rather than as "cn-news.com." And, while Maya HK asserts that most people who access the cnnews.com website in China likely have never heard of CNN, it is clear that many Chinese-speaking people worldwide, including residents of China, have access to plaintiff's television station as well as to the cnn.com website and its sub-sites.

Maya HK asserts that the target audience of its online services, including cnnews.com, is located entirely within China. Yet, there is a significant amount of English language content on both the cnnews.com site and the various linked sites, including (i) an art section on the cnnews.com website, (ii) an extensive site that provides information about the city of Shanghai offered by Shanghai Maya as part of a linked cnmaya.com website, and (iii) a variety of other English-language content prominently linked to the cnnews.com site by buttons and banners.[10] Furthermore, while Maya HK asserts that its business aspirations focus solely on China, it is significant that Tom.com, which owns 50% of Shanghai Maya, has stated publicly that it owns companies such as Shanghai Maya to allow it to fulfill its goal of creating a "megaportal" that provides Chinese content and commerce to the entire Chinese-speaking world.

Plaintiff acted promptly when it discovered that Wang had registered the cnnews.com domain name with NSI and that news information had been posted on that site. First, plaintiff notified Wang of its service mark rights and demanded that he transfer the domain name cnnews.com to plaintiff. Plaintiff also warned that it would pursue an ACPA *in rem* action in the Eastern District of Virginia to acquire control over the cnnews.com domain name, in the event Wang failed to comply with the demand. Maya HK responded that it did not intend to comply with plaintiff's demands. Next, plaintiff suggested that Wang change or modify the domain name of the news website to "cn-news.com" and use the new domain name only in Chinese characters. When this proposal was rejected, plaintiff filed this complaint,[11] alleging a violation of the *in rem* provisions of the ACPA. *See* 15 U.S.C. § 1125(d)(2)(A). More specifically, the complaint alleges that use of the cnnews.com domain name infringes and dilutes plaintiff's rights to the CNN mark, in violation of the Lanham Act, 15 U.S.C. §§ 1114, 1125(a), and the Federal Trademark Dilution Act, 15 U.S.C. § 1125(c).

Because plaintiff's representatives had provided the attorney for Maya HK and Wang with actual notice of the suit, plaintiff sought a waiver of the ACPA's service by publication requirement for *in rem* suits.[12] This request was denied. *See Cable News Network L.P., L.L.L.P. v. CNNews.com*, Civil Action No. 00–2022–A (E.D.Va. Jan. 29, 2001) (order). Plaintiff

---

**10.** Moreover, a website affiliated with the cnnews.com website offers adult-oriented content, including pictures of nude women, through a prominent link off its website to an affiliated cnmaya.com site operated by Shanghai Maya. The website prominently includes the e-mail address "cnnews@cnnews.com" immediately below the adult content on the website.

**11.** At oral argument, counsel for both parties reported that, in accordance with the registration agreement, the parties had engaged in nonbinding arbitration under the World Intellectual Property Organization and the Uniform Domain Name Dispute Resolution Policy. This record is silent as to the outcome or consequences of any such arbitration.

**12.** *See* 15 U.S.C. § 1125(d)(2)(A)(ii)(II)(bb) (To effect service of process, the owner of a mark must, *inter alia*, "publish[ ] notice of the action as [a] court may direct...").

then successfully completed service by publication pursuant to 15 U.S.C. § 1125(d)(2)(B) by sending its amended complaint[13] and other motions to Maya HK and Wang at the address provided in the WHOIS record[14] via e-mail and Fe-dEx[15] and by printing notice of the action for five consecutive days in Chinese, in the Hong Kong newspapers *Sing Tao* and *Apple Daily*, and in English, in the Hong Kong newspaper *South China Morning Post*.

■ In the course of serving process, plaintiff learned that after this controversy had arisen, but before plaintiff filed its complaint, Wang had changed the registrar for the cnnews.com domain name from NSI to Eastern Communications Company Limited ("Eastcom"), a Chinese registrar. Notwithstanding this change of registrars, Verisign continues to be the registry for the cnnews.com domain name, as it is for all ".com" websites.[16] Additionally, plaintiff learned that Wang had also changed the registrant of the cnnews.com domain name from himself to Maya HK, but kept himself as the administrative contact for the name.

■ On March 14, 2001, Eastcom, the current registrar for the cnnews.com domain name, and Verisign, the registry, agreed to transfer control of the cnnews.com domain name to this Court by depositing a registrar certificate for the cnnews.com domain name with the Clerk of this Court, as the ACPA requires. *See* 15 U.S.C. § 1125(d)(2)(D). This certificate, by its terms, "tenders to the Court complete control and authority over the registration for the cnnews.com domain name registration record."[17]

13. Plaintiff filed an amended complaint to notify the court of the fact that Maya HK had become the registrant of the disputed domain name.

14. "WHOIS" is the Verisign data base consisting, *inter alia*, of registrants' names and addresses. This data base includes the contact addresses that Maya HK and Wang provided to NSI and to Eastcom.

15. The FedEx package was returned as undeliverable because neither Maya HK nor Wang was found at the WHOIS address.

16. Thus, the change in registrars for cnnews.com had no effect on the situs of the power to transfer the domain name, as that power remained with Verisign. By exclusive contract with the U.S. Department of Commerce and ICANN, Verisign is the *exclusive* registry for all domain names in the ".com" top-level domain, including cnnews.com. *See, e.g., Thomas v. Network Solutions, Inc.*, 176 F.3d 500, 504 (D.C.Cir.1999). As such, Verisign maintains the root zone file for the ".com" top-level domain. This file is compiled from all registrations in the ".com" top-level domain submitted by all authorized registrars and contains the domain names in the ".com" top-level domain and their corresponding Internet Protocol ("IP") numbers or "addresses." These addresses are normally assigned by the registrars for the domain names. Yet, because Verisign controls the entries in the root zone file for the ".com" top-level domain, it has the ability to change the IP number matched with a particular domain name in the ".com" top-level domain. This effectively enables Verisign to transfer control of any ".com" domain name by matching the domain name with a different IP address in the root zone file.

17. Plaintiff asserts that Eastcom voluntarily deposited the registrar certificate after becoming aware of its obligation to do so. Maya HK, however, contends that Eastcom's deposit of the certificate was the product of coercion by plaintiff. In any event, this dispute is immaterial to the resolution of the motions at bar. Whatever the reason for the certificate's presence here, the situs of the cnnews.com domain name is now within this district, *see* 15 U.S.C. § 1125(d)(2)(C)(i), thereby providing a basis for this Court's jurisdiction. *See Cable News Network L.P., L.L.L.P. v. CNNews.com*, 162 F.Supp.2d 484, 489 (E.D.Va.2001). Furthermore, even were the domain name certificate not deposited with the Clerk of this Court, the domain

Maya HK[18] thereafter filed a timely motion to dismiss alleging that (i) the ACPA's *in rem* provisions do not provide a constitutionally permissible basis for jurisdiction; (ii) bad faith is a jurisdictional element of an ACPA *in rem* action that plaintiff had failed to plead and prove; (iii) plaintiff failed to join Maya HK as an indispensable party as required by Rule 19(b), Fed.R.Civ.P., and (iv) plaintiff's service of process was fatally defective. Maya HK's arguments were rejected and the motion to dismiss was denied. *See Cable News Network L.P., L.L.L.P. v. CNNews.com,* 162 F.Supp.2d 484 (E.D.Va. 2001). Following a period of discovery, the parties filed cross motions for summary judgment, which, having been fully briefed and argued, are now ripe for disposition.

## II.

To prevail on summary judgment[19] in this ACPA *in rem* suit, plaintiff must establish the following:

(1) that the suit was brought in the jurisdiction where the registrar, registry, or registrar certificate for the infringing domain name is located;[20]

(2) that *in personam* jurisdiction over a person or entity who would have been a defendant in an *in personam* civil action does not exist or that such a person is unable to be found through due diligence. *See* 15 U.S.C. § 1125(d)(2)(A)(i)-(ii);[21]

(3) that each of the elements of trademark infringement, pursuant to 15 U.S.C. § 1125(a), or, alternatively, trademark dilution, pursuant to 15 U.S.C. § 1125(c), are established in the factual record as a matter of law; and

(4) whether bad faith is a requirement for ACPA *in rem* actions, and, if so, whether the factual record establishes that Wang or Maya HK acted in bad faith in registering or using the domain name cnnews.com.

name's situs would still be located within this district because the registry, Verisign, is located here. *See* 15 U.S.C. § 1125(d)(2)(C)(ii)

18. Although both Maya HK and Wang initially noted appearances in this case, Maya HK is the sole remaining respondent in this matter. In the course of discovery, plaintiff sought unsuccessfully to have Shanghai Maya joined as a respondent in this litigation so that it would be subject to discovery. This effort failed, the Court ruling that in an *in rem* proceeding, parties with an interest in the *res* may appear, as claimants, but are not required to do so. Because both Maya HK, as registrant/owner/licensor, and Shanghai Maya, as exclusive licensee, have an interest in cnnews.com, both were eligible to participate as claimants in this proceeding, but neither was required to do so. As it was entitled to do, Shanghai Maya ultimately chose not to participate as a claimant in this proceeding. *See Cable News Network L.P., L.L.L.P. v. Cnnews.com,* Civil Action No. 00–2022–A (E.D.Va. Nov. 13, 2001) (order).

19. The summary judgment standard is satisfied when the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A "mere scintilla" of evidence, however, is not enough. "For the nonmoving party to avoid summary judgment, the evidence, when viewed in the light most favorable to that party, must be sufficient for a reasonable jury to find in its favor." *MacDonald v. Angelone,* 69 F.Supp.2d 787, 791 n. 7 (E.D.Va.1999) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986))

20. *See* 15 U.S.C. § 1125(d)(2)(A).

21. *See also Alitalia–Linee Aeree Italiane S.p.A. v. Casinoalitalia.com,* 128 F.Supp.2d 340, 344–45 (E.D.Va.2001) (holding that the ACPA's *in personam* and *in rem* provisions are mutually exclusive).

■ The first two matters present no difficulty; both are plainly established. First, it is not disputed that the registry, Verisign, and the domain name certificate are both located within this district. And second, it is already resolved in this case that no American court has *in personam* jurisdiction over Wang, Maya HK, or Shanghai Maya.[22] The remaining issues plaintiff must establish to prevail on summary judgment require more extensive treatment.

## A. Elements of Trademark Infringement

■ As part of its ACPA *in rem* claim, plaintiff asserts that the cnnews.com domain name infringes its CNN trademark in violation of the Lanham Act, 15 U.S.C. § 1125(a). In general, as the Fourth Circuit's recent *Doughney* decision teaches, a plaintiff asserting a trademark infringement cause of action under the ACPA must prove the following elements:

(1) that it possesses a mark;

(2) that the registrant used the mark;

(3) that the registrant's use of the mark occurred "in commerce;"

(4) that the registrant used the mark "in connection with the sale, offering for sale, distribution, or advertising" of goods or services; and

(5) that the registrant used the mark in a manner likely to confuse consumers.[23]

*See People for the Ethical Treatment of Animals v. Doughney*, 263 F.3d 359, 364 (4th Cir.2001) (citing 15 U.S.C. §§ 1114, 1125(a)); *see also Petro Stopping Ctrs., L.P. v. James River Petroleum, Inc.*, 130 F.3d 88, 91 (4th Cir.1997). Because the undisputed record reflects that plaintiff's CNN mark is registered and that Maya HK has used the mark, plaintiff has therefore satisfied the first two *Doughney* factors. Furthermore, undisputed evidence establishes that the CNN mark is used to distribute a service, namely, providing news and information services, thus satisfying the fourth *Doughney* factor.

### 1. The "Use in Commerce" Requirement

■ The next trademark infringement element—the "use in commerce" requirement—is hotly contested here. In essence, Maya HK argues that the cnnews.com domain name is not substantially "used in commerce" according to the terms of the Lanham Act because "commerce" under the Lanham Act refers to U.S. commerce and the domain name registration contract between Maya HK and Eastcom in China and the royalties Maya HK receives from Shanghai Maya do not have

---

**22.** *See Cable News Network L.P., L.L.L.P. v. CNNews.com*, 162 F.Supp.2d 484, 489 (E.D.Va.2001). From this record, it appears that the only contacts either Wang or Maya HK has had with any American jurisdiction are those incident to the initial registration of cnnews.com with NSI. These contacts do not provide a constitutionally adequate basis for the exercise of *in personam* jurisdiction. *See America Online, Inc. v. Huang*, 106 F.Supp.2d 848, 855–60 (E.D.Va.2000); *Heathmount A.E. Corp. v. Technodome.com*, 106 F.Supp.2d 860, 865–66 (E.D.Va.2000).

**23.** Plaintiff may also be required to establish that the undisputed record reflects that the

CNN mark is distinctive to prove its claim of trademark infringement. *See* U.S.C. § 1125(d)(1)(A)(ii)(I). Just as it is unclear whether the *in rem* provisions of the ACPA incorporate the *in personam* requirement to show bad faith, so also, for the same reasons, it is unclear whether the *in rem* provisions incorporate the *in personam* requirement that the alleged infringed mark be shown to be distinctive. *See infra* discussion Part II.C. Although the parties did not address this issue, it is apparent that even assuming distinctiveness is an element of an ACPA *in rem* suit, the undisputed record clearly establishes that the CNN mark is distinctive.

any effect on U.S. commerce. Maya HK further contends that only persons residing in China, who must pay with Chinese currency, can purchase goods via the cnnews.com website. Plaintiff counters by arguing that because the cnnews.com website provides news and information services globally to anyone who is connected to the Internet, including Chinese speakers in the United States, the disputed domain name cnnews.com is therefore "used in commerce" under the Lanham Act and the ACPA.

A mark is used in commerce "when it is used or displayed in the sale or advertising of services and the services are rendered in commerce, or the services are rendered in more than one State or in the United States and a foreign country and the person rendering the services is engaged in commerce in connection with the services." 15 U.S.C. § 1127. While no Fourth Circuit authority directly addresses the scope of the phrase "use in commerce" in this context, other circuits have reached the sensible conclusion that the term "use in commerce" under the Lanham Act "denotes Congress's authority under the Commerce Clause rather than an intent to limit the [Lanham] Act's application to profit making activity." [24] Thus, it is clear that the provision of news and information services on the Internet constitutes "commerce" under the Act.[25] But this does not end the analysis, as it is less clear whether the "use in [U.S.] commerce" requirement is met where, as here, a website ostensibly directed solely at internet users outside the U.S. can satisfy the requirement. In these circumstances, an effect on American commerce is not obvious. Yet, on closer scrutiny, the requisite effect or impact on American commerce is discernible. This effect or impact results from the global nature of the Internet, the existence in this country of a not insubstantial number of persons with Chinese language skills,[26] the fact that ".com" is essentially an American top-level domain[27] and the fact that CNN is a famous mark in this country and indeed internationally. These circumstances combine to mean that even though the cnnews.com website apparently neither sells, nor offers to sell, any goods outside China, the cnnews.com website nonetheless offers news and information (i.e., "commerce") to persons with Chinese language skills in

**24.** *United We Stand Am., Inc. v. United We Stand, Am. N.Y., Inc.*, 128 F.3d 86, 92–93 (2d Cir.1997). *See also Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1194 (11th Cir.2001) ("Because Congress' authority under the Commerce Clause extends to activity that substantially affects interstate commerce, the Lanham Acts's definition of commerce is concomitantly broad in scope: all commerce which may lawfully be regulated by Congress.") (internal citations and quotation marks omitted).

**25.** In the computer and Internet context, courts have consistently held that providing information over the Internet satisfies the commerce requirement of the Lanham Act. *See Planetary Motion*, 261 F.3d at 1194–95 (holding that the distribution of software for end-users over the Internet satisfies the "use in commerce" jurisdictional predicate); *Planned Parenthood Fed'n of Am., Inc. v. Bucci*, 1997 WL 133313, * 3 (S.D.N.Y.1997) (holding that "[t]he nature of the Internet indicates that establishing a typical home page on the Internet, for access to all users would satisfy the Lanham Act's 'in commerce' requirement"), *aff'd*, 152 F.3d 920 (2d Cir. 1998), *cert. denied*, 525 U.S. 834, 119 S.Ct. 90, 142 L.Ed.2d 71 (1998).

**26.** This fact, although not in the record, is a proper subject of judicial notice. *See* Rule 201, Fed.R.Evid.

**27.** For many years, Verisign, an American company, was the only registrar for all ".com" domain names. Although this is no longer the case, Verisign remains the sole registry for all ".com" names.

this country and indeed worldwide. In doing so, American commerce is affected.

The parties cite no authority directly in point on this issue. Maya HK's heavy reliance on *Steele v. Bulova*, 344 U.S. 280, 287, 73 S.Ct. 252, 97 L.Ed. 319 (1952), is misplaced, as it is inapposite. There, a court issued an injunction that explicitly enjoined a defendant's infringement activity in Mexico. *See id.* In affirming this result, the Supreme Court announced a three-part test governing the issuance of extraterritorial injunctions. *See id.* at 286–87, 73 S.Ct. 252. Yet, *Steele* is inapposite here because the order that would issue in this case, assuming plaintiff prevails, would not specifically enjoin any activity outside the United States; instead, it would be limited to ordering Verisign in this county to transfer ownership of a ".com" domain name, the situs of which is also in this country.[28] Such an order would not trigger the *Steele* three-part test or implicate concerns raised by extraterritorial injunctions.[29]

## 2. Likelihood of Confusion

▮▮▮▮ Likelihood of confusion is the crux of a trademark infringement claim and, in this case, plaintiff must show that the factual record establishes that Maya HK's unauthorized use of the CNN mark creates a likelihood of confusion for an

"'ordinary consumer' as to the source or sponsorship of the goods." *Anheuser-Busch, Inc. v. L & L Wings, Inc.*, 962 F.2d 316, 318 (4th Cir.1992). As ordinary customers of Internet news and information services are found within the United States, it is appropriate to determine the likelihood of confusion among such domestic consumers. And, "[t]o determine whether a likelihood of confusion exists, a court should not consider how closely a fragment of a given use duplicates the trademark, but must instead consider whether the use in its entirety creates a likelihood of confusion." *Doughney*, 263 F.3d at 366. It is well established that although "the likelihood of confusion is a factual issue dependent on the circumstances of each case..., summary judgment is appropriate when the material, undisputed facts disclose a likelihood of confusion." *Resorts of Pinehurst, Inc. v. Pinehurst Nat. Corp.*, 148 F.3d 417, 422 (4th Cir.1998). When analyzing whether confusion is likely, courts generally consider the following factors:

(1) the strength of the CNN mark;

(2) the similarity between the cnnews.com domain name and the CNN mark;

(3) the similarity between CNN's services and the service provided under the cnnews.com mark;

---

28. Also inapposite for the same reason are *Nintendo of Am., Inc. v. Aeropower Co.*, 34 F.3d 246, 250 (4th Cir.1994) and *American Rice, Inc. v. Arkansas Rice Growers Coop. Ass'n*, 701 F.2d 408 (5th Cir.1983), two decisions applying *Steele*.

29. To be sure, an order in this case transferring ownership of a ".com" domain name may have consequences outside the United States, but the order itself does not address or prohibit any extraterritorial conduct. In other words, an order transferring ownership of cnnews.com from Maya HK to plaintiff does not address whether, for example, Maya HK may place a sign emblazoned with plaintiff's

CNN mark on its Hong Kong place of business. In short, injunctions or orders often have extraterritorial effects or consequences, but this alone will not implicate *Steele*, which becomes relevant only when, as would not be the case here, the order specifically addresses extraterritorial conduct. Put differently, this is not, as Maya HK argues, a case in which a plaintiff is asking an American court to order a Chinese company to do or refrain from doing some activity in China. It is, instead, a case in which a plaintiff seeks an order requiring a company located in this jurisdiction to take action with respect to a domain name that is also located in this jurisdiction.

(4) the similarity between the facilities plaintiff uses in its business and the facilities used in connection with the provision of services under the cnnews.com domain name;

(5) the similarity between CNN's advertising and advertising used to promote services offered under the cnnews.com domain name;

(6) the intent underlying use of the domain name; and

(7) the existence of any actual confusion.

See *Petro Stopping Ctrs.*, 130 F.3d at 91 (citing *Pizzeria Uno Corp. v. Temple,* 747 F.2d 1522, 1527 (4th Cir.1984)). See also *Washington Speakers Bureau, Inc. v. Leading Authorities, Inc.,* 33 F.Supp.2d 488, 497 (E.D.Va.1999) (noting that these factors are for the court to consider and weigh), *aff'd,* 217 F.3d 843 (4th Cir.2000). While these are the factors courts generally use, not all of these factors "are always relevant or equally emphasized in each case." *Pizzeria Uno,* 747 F.2d at 1527. Thus, in determining whether a likelihood of confusion exists, courts should consider the specific facts and circumstances of each case. See *Anheuser–Busch,* 962 F.2d at 318.

Here, six of the seven factors weigh distinctly in favor of the likelihood of confusion and the undisputed record as a whole indicates a strong likelihood of confusion. First, the CNN mark is registered in the United States and is clearly famous. See *Cable News Network L.P., L.L.L.P. v. CNNews.com,* 162 F.Supp.2d 484, 486 (E.D.Va.2001) ("There can be no doubt that plaintiff's CNN mark is famous."); *Cable News Network L.P., L.L.L.P. v. CNNTurkey.com,* Civil Action No. 00–0031–A (E.D.Va. July 31, 2000) (same). Because it is well-established and documented that the CNN mark is famous, it is also strong.

The second factor's central relevance to the likelihood of confusion is obvious: the closer the resemblance between the protected mark and the domain name, the more likely the prospect for confusion. And here, importantly, the cnnews.com domain name is strikingly similar to the CNN mark because it incorporates the mark in its entirety. Also important in this regard is that Shanghai Maya has publicly admitted that it intends the domain name to be viewed as including the acronym "CNN." Not surprisingly, then, this is precisely how most would likely view the domain name; the addition of the generic word "news" does nothing to distinguish the domain name from the CNN mark. Rather, it likely exacerbates the confusion because the acronym "CNN" when used in connection with news services is reasonably understood to refer to CNN and its news services.

The fourth factor also points to a likelihood of confusion, as the record unequivocally establishes that cnnews.com and plaintiff's website cnn.com are used for the same purposes; both are used and have been used to offer the public access to general, financial, and business news and information over the Internet. Thus, cnnews.com, a domain name strikingly similar to plaintiff's protected mark, is used to identify a website that offers services that compete directly with plaintiff's services (albeit in different languages). Thus, Internet users in this country who access the cnnews.com site may well be confused as to whether plaintiff sponsors or is connected in any way with the site. And this is so whether or not the Internet user possesses Chinese language skills. If she does, then she will discern that the services and content on cnnews.com (e.g., financial and business news) are similar to those for which plaintiff is known and will at least wonder about a possible connection, notwithstanding references to Chi-

nese entities, which, given the domain name's resemblance to plaintiff's mark, may also be thought to be somehow connected with plaintiff. Also noteworthy in this regard is that the cnnews.com website includes several uses of the mark "CNN." Nor is potential confusion limited to American residents possessing Chinese language skills; English-speaking Internet users in this country who, seeking plaintiff's services, mistakenly access cnnews. com may well draw the invited inference that this site is connected with plaintiff even though virtually all of the content will be inaccessible to them; they are likely to believe, mistakenly, that cnnews.com is one of the many regional language websites plaintiff operates under the CNN mark. In sum, this factor also supports a likelihood of confusion.

■ The relevance of the registrant's or user's intent as to the domain name is apparent; simply put, one who intends to confuse is more likely to succeed in doing so. Thus, a user or registrant who seeks the benefits of a protected mark by using a domain name that is similar to the mark plainly intends to cause confusion and is therefore more likely to succeed in doing so than one without such intent. Because intent can often be shown only circumstantially, some courts hold that knowledge of another's mark coupled with a striking similarity between the marks invites an inference that the junior user intended to trade on the senior user's goodwill. *See Fleischmann Distilling Corp. v. Maier Brewing Co.*, 314 F.2d 149, 157 (9th Cir. 1963). Here, because plaintiff sent a cease and desist letter to Maya HK's director Heyu Wang in April 2000, Maya HK had actual knowledge of plaintiff and its rights

at the time Maya HK registered the domain name in October 2000. Moreover, because CNN is known throughout China and the rest of Asia, the CNN mark would surely have been well-known to any party in the news business, including Maya HK and Wang. Thus, the record in this case supports an inference that Maya HK intended to infringe the CNN mark.

The final factor—evidence of actual confusion—plays no role here as there is no record evidence of the existence or absence of actual confusion.

Thus, because a clear majority of the likelihood of confusion factors weigh heavily in plaintiff's favor and because the record as a whole supports a determination of a likelihood of confusion, plaintiff has proven trademark infringement for the purposes of the ACPA.

## B. Elements of Trademark Dilution

■ "Dilution" is statutorily defined as the lessening of the capacity of a famous mark to identify and distinguish goods or services, regardless of the presence or absence of—(1) competition between the owner of the famous mark and other parties, or (2) likelihood of confusion, mistake, or deception. *See* 15 U.S.C. § 1127. To prove dilution, plaintiff must show that: (1) it owns valid and enforceable rights in the CNN mark; (2) the CNN mark is famous and became so prior to the registration and/or use of the domain name; (3) registration and/or use of the domain name constitutes use of the mark in commerce; and (4) the registration and/or use of the domain name dilutes the distinctive quality of the CNN mark.[30]

---

**30.** *See* 15 U.S.C. § 1125(c). *See also Ringling Bros.-Barnum & Bailey Combined Shows, Inc. v. Utah Div. of Travel Dev.*, 170 F.3d 449, 452 (4th Cir.1999) (holding that "[u]nder the [FTDA], the owner of a famous mark is given

protection against another person's commercial use... of a mark or trade name, if such use begins after the mark has become famous and causes dilution of the distinctive quality

■ The record clearly shows that the first three of these four requirements are met. Thus, it is undisputed that plaintiff owns' valid and enforceable service mark rights in the CNN mark, as evidenced by its longstanding use of the mark and the registrations that have issued for the CNN mark by the U.S. Patent and Trademark Office and various foreign registration bodies.[31] Second, it is clear that the CNN mark is "famous" under the Act and that it achieved this status prior to Maya HK's registration of the cnnews.com domain name.[32] And, third, as the discussion of trademark infringement established, the cnnews.com domain name is used "in commerce."[33]

■ The fourth requirement-the requirement of dilution itself-is more problematical. The Act defines "dilution" as "the lessening of the capacity of a famous mark to identify and distinguish goods or services regardless of the presence or absence of (1) competition between the owner of the famous mark and other parties, or (2) likelihood of confusion, mistake, or deception." 15 U.S.C. § 1127. And, it is settled that dilution can occur either through tarnishment or blurring of the distinctive quality of a famous mark. *See Ringling Bros.*, 170 F.3d at 452. But there is a circuit split regarding whether a plaintiff seeking to prove dilution must show actual economic harm to its famous mark or merely a threatened injury. While certain circuits have determined that a plaintiff need only show a threatened injury to the strength of a famous mark,[34] this circuit and one other have required a showing of actual harm.[35]

■ Under *Ringling Bros.*, actual economic harm may be demonstrated in three ways. *See id.* at 465. First, a plaintiff may show proof of an actual loss in revenues attributable to the offending domain name. *See id.* This plaintiff has shown no such loss in revenue. Second, a plaintiff may conduct a proper consumer survey designed to demonstrate that consumers or customers in a relevant market mental-

of the mark") (internal citations and quotation marks omitted).

31. *See supra* notes 2–3 and accompanying text.

32. To determine whether a mark is famous, 15 U.S.C. § 1125(c) instructs courts to consider the following factors:
(a) the degree of inherent or acquired distinctiveness of the mark;
(b) the duration and extent of its use;
(c) the duration and extent of advertising and publicity;
(d) the geographical area in which the mark is used;
(e) the channels of trade;
(f) the degree of recognition of the mark in the parties' channels of trade;
(g) the nature and extent of third-party use of the same or similar marks; and
(h) whether the mark is federally registered.
*See* 15 U.S.C. § 1125(c)(1).
As the undisputed record reflects, these factors firmly support the fame of the CNN mark given plaintiff's longstanding, prominent, worldwide use of the mark. *See Cable News Network L.P., L.L.L.P. v. CNNews.com*, 162 F.Supp.2d 484, 486 (E.D.Va.2001). Nor is this the only such judicial determination. *See Cable News Network L.P., L.L.L.P. v. CNNTurkey.com*, Civil Action No. 00–0031–A (E.D.Va. July 31, 2000) (holding that the CNN mark is famous).

33. *See supra* part II.A.1. As 15 U.S.C. § 1127 makes clear, the phrase "use in commerce" is defined the same for trademark dilution as it is for trademark infringement.

34. *See Nabisco, Inc. v. PF Brands, Inc.*, 191 F.3d 208, 223 (2d Cir.1999); *Eli Lilly & Co. v. Natural Answers, Inc.*, 233 F.3d 456, 467 (7th Cir.2000); *V Secret Catalogue, Inc. v. Moseley*, 259 F.3d 464, 474–76 (6th Cir.2001).

35. *See Ringling Bros.*, 170 F.3d at 453; *Westchester Media v. PRL USA Holdings, Inc.*, 214 F.3d 658 (5th Cir.2000).

ly associate the offending domain name with the famous mark and also to determine "further consumer impressions from which actual harm and cause might rationally be inferred." *Id.* This, too, was not done here. While plaintiff cites to several surveys that address whether Asian and Chinese business persons are familiar with CNN, plaintiff does not address whether the cnnews.com website has affected consumer impressions of the CNN mark. Third, to complement other proof, plaintiff may show contextual factors such as the extent of the junior mark's exposure, the similarity of the marks, and the firmness of the senior mark's hold. *See id.* While the record shows such contextual factors, *Ringling Bros.* makes clear that these contextual factors, standing alone, do not prove dilution; they serve only to complement and supplement other, more probative factors. *See id.* In sum, because this record contains no evidence of actual economic harm attributable to the registration and use of the cnnews.com domain name, plaintiff has failed to establish a basis for summary judgment on its claim for dilution under Section 1125(c), and, therefore, under Section 1125(d)(2)(A). Given this result, it is unnecessary to address the specific elements of tarnishment and blurring in the context of this case.

At this point in the analysis, then, the record, reflects (1) that this action meets the ACPA's procedural requirements for an *in rem* proceeding and (2) that plaintiff has established the elements of trademark infringement under the Lanham Act, but not the elements of dilution under the

FTDA. But, this is not the end of the analysis under the ACPA. Yet to be determined is whether a plaintiff in an ACPA *in rem* action must also prove that the registrant or user of the offending domain name acted in bad faith in registering or using the offending domain name.

## C. Whether Bad Faith Is Required in an ACPA *in rem* Action

It is not definitively settled whether the ACPA's *in rem* provisions require a showing that the registrant or user of an offending domain name acted in bad faith. The statute itself is arguably ambiguous on this point and while some courts have held that bad faith must be shown in an ACPA *in rem* action,[36] just as it must be shown in an ACPA *in personam* action, at least one court has held the contrary[37] and a distinguished commentator has recorded his agreement with that view.[38]

Because the issue involves construction of the ACPA, it is well-established that "[a]ny analysis involving statutory construction must begin with the plain meaning of the statute itself." *Chris v. Tenet,* 221 F.3d 648, 651–52 (4th Cir.2000). In this regard, it is significant that bad faith is nowhere explicitly mentioned in the *in rem* portion of the ACPA. Courts concluding that a bad faith requirement is incorporated into the ACPA's *in rem* provision point to language in Section 1125(d)(2)(A)(ii)(I), stating that an *in rem* suit may be brought if, *inter alia,* the owner of a mark "is not able to obtain in personam jurisdiction over a person who

---

36. *See Harrods Ltd. v. Sixty Internet Domain Names,* 110 F.Supp.2d 420, 426 (E.D.Va. 2000); *Hartog & Co. v. SWIX.com,* 136 F.Supp.2d 531, 539–40 (E.D.Va.2001); *BroadBridge Media, L.L.C. v. Hypercd.com,* 106 F.Supp.2d 505, 510 (S.D.N.Y.2000); *V'soske, Inc. v. Vsoske.com,* 2001 WL 546567 (S.D.N.Y. 2001).

37. *See Jack in the Box, Inc. v. Jackinthebox.org,* 143 F.Supp.2d 590, 592 (E.D.Va. 2001).

38. *See* 4 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 25:79 (2001).

would have been a defendant in a civil action under [the *in personam* provisions of the ACPA]," which provisions explicitly require a showing of bad faith. Thus, these courts conclude that by referencing the *in personam* section of the ACPA, the requirement of bad faith from that section is incorporated into the *in rem* section, thus requiring the plaintiff in an *in rem* action to prove the registrant's or user's bad faith. The dissenting court and commentator argue that Section 1125(d)(2)(A)(ii)(I) does not incorporate bad faith as a requirement of an ACPA *in rem* action, but serves only to identify the class of persons or entities who must be beyond the jurisdiction of any American court before a plaintiff can bring an ACPA *in rem* claim. These conflicting constructions, neither of which is unreasonable, are convincing evidence that on this point the ACPA has no plain meaning, but is ambiguous because "its terms give[ ] rise to more than one meaning or interpretation." *See United States v. Murphy*, 35 F.3d 143, 145 (4th Cir.1994). And, when a statute is ambiguous, courts appropriately refer to the statute's structure and purpose to resolve the ambiguity. *See United States v. Jackson*, 759 F.2d 342, 344 (4th Cir.1985); *Johnson v. Garraghty*, 57 F.Supp.2d 321, 326 (E.D.Va.1999). Doing so in these circumstances points persuasively to the conclusion that *in rem* ACPA actions, like their *in personam* cousins, require a showing of a registrant's or user's bad faith with regard to the registration or use of an offending domain name.

The ACPA's purpose is made manifest in its title: it is designed to deter, prohibit and remedy "cyberpiracy," which is defined in the legislative history as the *bad faith* registration or use of a domain name. *See Harrods*, 110 F.Supp.2d at 426 (citing H.R. Conf. Rep. No. 106–464 (1999); S.Rep. No. 106–140 (1999)). This purpose is given proper effect by resolving the ambiguity in favor of requiring bad faith in ACPA *in rem* actions. And, given that bad faith is an explicit requirement of ACPA *in personam* actions, this resolution of the ambiguity finds further support in the resulting structural symmetry. As bad faith is an element of an *in personam* cybersquatting action, so too should it be an element of an *in rem* cybersquatting action. The essence of both actions is cybersquatting, which is a bad faith act. In sum, the ACPA's structure and purpose support the conclusion that the language of Section 1125(d)(2)(A)(ii)(I) should be read, as most courts have, to incorporate a bad faith requirement into the *in rem* section of the ACPA and not merely to define the circumstances in which an *in rem* proceeding is appropriate.[39]

### D. Whether the Record Establishes That Maya HK Engaged in Bad Faith

■ The ACPA lists nine nonexclusive factors that courts may consider in deter-

---

39. Proponents of the contrary view argue that an *in rem* action focuses on the name itself, not the acts of the registrant or user. This conclusionary argument is unpersuasive, as it assumes the point in issue, namely what the focus is of an ACPA *in rem* action. Proponents also argue that requiring a bad faith showing in an *in rem* action places an unreasonable burden on plaintiffs in *in rem* actions in the event, as may often occur, that the registrant or user of the offending domain name is not available or amenable to discovery. This argument is also unpersuasive. The absence of a registrant or user may hinder or conceivably aid a plaintiff's efforts to show bad faith in various cases, but in no event is proof of bad faith absolutely precluded or impossible simply because the matter proceeds *in rem*. Moreover, the speculative prospect of an increased difficulty of proof in some cases cannot trump what the statute is ultimately construed to require, nor is it a sound basis or guide for statutory construction.

mining whether a domain name has been registered or used in bad faith.[40] While courts are not obliged to consider every factor and may decide to consider additional factors as well, these are the main factors courts use to determine whether bad faith exists. Each factor addresses whether there is some legitimate reason for the registrant or user to have or make use of the disputed domain name.

The first is whether Maya HK has any legitimate rights in the CNN mark. *See* 15 U.S.C. § 1125(d)(1)(B)(i)(I). On this record, it is clear that neither Maya HK nor Shanghai Maya claims to own any rights in any trademark or service mark that is identical or similar to the CNN mark. Maya HK's selection of cnnews.com as a domain name is unrelated to any of Maya HK's or Shanghai Maya's trademarks. This factor, therefore, supports a conclusion of bad faith.

The second factor is whether the domain name, cnnews.com, constitutes a legal name or commonly-used name for Maya HK.[41] *See* 15 U.S.C. § 1125(d)(1)(B)(i)(II). An alleged cyberpirate can only satisfy this factor if its name or commonly used nickname is the same as the domain name in question. It is clear that cnnews.com or anything similar is neither the legal name of Maya HK, nor a commonly used name for that entity. Therefore, this factor also supports a finding of bad faith.

The third factor is whether Maya HK has engaged in prior, bona fide use of the CNN mark. *See* 15 U.S.C. § 1125(d)(1)(B)(i)(III). Maya HK and Shanghai Maya have admitted that they made no prior use of the domain name in connection with the offering of bona fide services prior to plaintiff's establishing rights in the CNN mark. It is also clear in the record that Maya HK had actual knowledge of plaintiff's television networks and websites that display the CNN mark because Maya HK did not become the registrant of the cnnews.com domain name

**40.** The factors are:

    (1) the trademark or other intellectual property rights of the registrant, if any, in the domain name;

    (2) the extent to which the domain name consists of the legal name of the person or a name that is otherwise commonly used to identify that person;

    (3) the person's prior use, if any, of the domain name in connection with the bona fide offering of any goods or services;

    (4) the person's bona fide noncommercial or fair use of the mark in a site accessible under the domain name;

    (5) the person's intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark;

    (6) the person's offer to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain without having used, or having intent to use, the domain name in the bona fide offering of any goods or services or the person's prior conduct indicating a pattern of such conduct;

    (7) the person's provision of material and misleading false contact information when applying for the registration of the domain name, the person's intentional failure to maintain accurate contact information, or the person's prior conduct indicating a pattern of such conduct.

    (8) the person's registration or acquisition of multiple domain names that the person knows are identical or confusingly similar to the distinctive marks of others or are dilutive of the famous marks of others; and

    (9) the extent to which the mark incorporated in the domain name is distinctive and famous within the meaning of the Federal Trademark Dilution Act.

    ·*See* 15 U.S.C. § 1125(d)(1)(B)(i).

**41.** For example, this factor would not support a finding of bad faith for an individual with the last name "Ford," who registers or uses the domain name "ford.com."

until after plaintiff made known its dissatisfaction with Wang's initial registration of the cnnews.com domain name. It also appears that Maya HK, Wang, and Shanghai Maya adopted cnnews.com with the intent that consumers view the "cnnews" portion of the domain name as representing "China Network News," the abbreviation for which is "CNN," despite the fact that Maya HK and Shanghai Maya each had knowledge of plaintiff and the worldwide fame of its CNN mark prior to the time Maya HK registered the cnnews.com domain name.[42] Thus, because no record facts suggest that Maya HK engaged in the prior, bona fide use of the CNN mark, the third factor supports a finding of bad faith.

The fourth factor is whether Maya HK engaged in any bona fide noncommercial or "fair use" of the CNN mark. *See* 15 U.S.C. § 1125(d)(1)(B)(i)(IV). The purpose of this factor is to ensure that domain name registrants and users engaged in noncommercial activities, such providing political discourse or parody, are not trapped by the ACPA's bad faith net. Again, the record is devoid of any evidence that Maya HK or Shanghai Maya used the cnnews.com website for bona fide noncommercial or "fair use" purposes. Rather, because use of the term "CNN" on the cnnews.com website is part of an overall commercial effort to provide news and information to Internet surfers, Maya HK cannot claim refuge under the "fair use" umbrella. The fourth factor, therefore, supports a conclusion of bad faith.

The fifth factor is whether Maya HK intended to divert consumers from plaintiff's online location to a site accessible under the domain name that might harm the goodwill represented by plaintiff's mark, either for commercial gain or with the intent to tarnish or disparage the mark by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site. *See* 15 U.S.C. § 1125(d)(1)(B)(i)(V). Intent, of course, is rarely discernible directly. Typically, it must be inferred from pertinent facts and circumstances. In this regard, the record reflects, contrary to Maya HK's contentions, that targeting customers in China was not the sole motive of Maya HK in registering cnnews.com and of Shanghai Maya in using the name to identify a website. Were that their sole motive, surely they would have registered a less similar name in the ".cn" top-level domain in China. Instead, belying a motive to trade off plaintiff's famous mark, they registered a ".com" name remarkably similar to plaintiff's mark with an American registry. The use of the English word "news" in the domain name also suggests that the target audience is not restricted to China.[43]

In the same vein, it is noteworthy that there is a significant amount of English language content on the cnnews.com website itself and on sites linked to cnnews.com. This content includes information in English on a sister cnmaya website that is plainly directed at non-Chinese individuals with an interest in traveling to Shanghai. There would be no reason to post this content on, or link to, the cnnews.com website if Maya HK and Shanghai Maya did not both know and intend for the site

---

**42.** In this respect, there is compelling record evidence that the CNN mark is famous worldwide, including in Hong Kong and Shanghai, where Maya HK and Shanghai Maya are located.

**43.** *See Harrods Ltd. v. Sixty Internet Domain Names,* 157 F.Supp.2d 658, 675 (E.D.Va. 2001) (noting that defendant's addition of English words to plaintiff's mark was "highly suspect" where neither defendant claimed to speak English and holding that defendant had in fact acted in bad faith).

to be accessed by non-Chinese residents. Finally, this point is further strengthened by Shanghai Maya's avowed goal, clear in the record, that it aspires to the creation of a "megaportal" that would provide services worldwide. Therefore, the fifth factor supports a finding of bad faith.

The sixth factor is whether Maya HK offered to transfer or sell the domain name for financial gain without having an intent to use the domain name in the bona fide offering of any goods or services. *See* 15 U.S.C. § 1125(d)(1)(B)(i)(VI). This factor addresses "the conduct of the prototypical cybersquatter who registers a domain name with no intent to use it and offers to sell it to the legitimate trademark owner." McCarthy § 25:78, 25–265 (citing House Judiciary Committee Report on H.R. 3028, H.R.Rep. No. 106–412 p. 12 (Oct. 25, 1999)). Although Maya HK *did* sell its rights to its parent company, Shanghai Maya, for financial gain, in this case undisputed evidence reflects that Maya HK and Shanghai Maya attempted to use the cnnews.com domain name to provide news, not to induce plaintiff to pay to recover the name. Thus, on this record, the sixth factor does not support a conclusion of bad faith.

The seventh factor is whether Maya HK provided material and misleading false contact information when applying for the registration of the domain name. *See* 15 U.S.C. § 1125(d)(1)(B)(i)(VII). It is clear from the record that the contact information in the WHOIS record was not valid. Maya HK presented no evidence that this was merely the product of an innocent mistake. While this fact of record, by itself, might support an inference of bad faith, that inference is weakened, if not wholly erased, by the fact that plaintiff ultimately located Maya HK and Wang, neither of which made any concerted effort to conceal a connection to cnnews.com. It follows that this factor offers little or no support for a finding of bad faith.

The eighth factor is whether Maya HK registered or acquired multiple domain names that it knew were identical or confusingly similar to marks of others that are distinctive. *See* 15 U.S.C. § 1125(d)(1)(B)(i)(VIII). The factor is designed to address the phenomenon of "warehousing," that is, the registration of many domain names consisting of various identical or similar combinations of the marks of others.[44] In this case, however, the undisputed record reflects that there is only one domain name registered by Maya HK containing the letters "cnn."[45] This factor, then, does not raise an inference of bad faith.

The ninth factor concerns the extent to which the mark incorporated in the registrant's domain name registration is or is not distinctive and famous. *See* 15 U.S.C. § 1125(d)(1)(B)(i)(IX). It is clear that Maya HK knew that the CNN mark is distinctive and famous and nevertheless chose in a commercial context to use the mark as a domain name and on its websites.[46] Thus, the ninth factor supports a conclusion of bad faith.

44. The case of *Intermatic, Inc. v. Toeppen,* 947 F.Supp. 1227 (N.D.Ill.1996) demonstrates the practice of warehousing. There, defendant registered over 200 domain names, including deltaairlines.com, britishairways.com, crateandbarrel.com, and ussteel.com.

45. Maya HK has registered the mark cnnav. com, which, according to Maya HK, is the abbreviation for "China National Audio Video."

46. In the directly analogous context of concurrent use cases in the United States, the clear majority of courts hold that a junior user's knowledge of the senior user's mark defeats any ability of the junior user to argue that its use is in good faith, no matter how remote the junior user's use of the mark may

In sum, six of the nine statutory factors support plaintiff's claim that cnnews.com has been registered and used in bad faith. It is also apparent that Maya HK falls outside the ACPA's "safe harbor," which states that "[b]ad faith intent. . . shall not be found in any case in which the court determines that the person believed and *had reasonable grounds to believe* that the use of the domain name was a fair use or otherwise lawful." 15 U.S.C. § 1125(d)(1)(B)(ii) (emphasis added). Yet, a defendant "who acts even partially in bad faith in registering a domain name, is not, as a matter of law, entitled to benefit from the ACPA's safe harbor provision." *See Virtual Works, Inc. v. Volkswagen of Am., Inc.*, 238 F.3d 264, 270 (4th Cir.2001). *See also Doughney*, 263 F.3d at 369. It is apparent on this record that there were no reasonable grounds for Maya HK to believe that its use of the domain name was lawful under American trademark law. *See Doughney*, 263 F.3d at 369. Even assuming, as seems to be the case, that most users of the cnnews.com website are located in China, Maya HK is mistaken in its belief that this fact enables it to take advantage of the ACPA's safe harbor provision given the substantial fame of the CNN mark in China, the ability of Chinese residents to access plaintiff's news and information website through both official and unofficial means, and the fact that Maya HK registered the cnnews.com domain name after plaintiff notified Maya HK of its legal rights in the CNN mark. Thus, Maya HK cannot claim the benefit of the ACPA safe harbor provision.

### III.

Maya HK argues that, in this case and under these circumstances, application of United States substantive law to transfer the certificate of the cnnews.com domain name to plaintiff would violate due process by unconstitutionally disrupting the contract between two foreign entities, Maya HK and its registrar, Eastcom. Maya HK also argues that the transfer of the domain name certificate is tantamount to the issuance of an unconstitutional extraterritorial injunction against Maya HK.

Because the certificate for the cnnews.com domain name is deposited with the Clerk of this Court and the registry for the domain name, Verisign, is located within this judicial district, the situs of the domain name is in this district and the application of United States substantive law to it is consistent with due process. *See Cable News Network L.P., L.L.L.P. v. CNNews.com*, 162 F.Supp.2d 484, 491 (E.D.Va.2001). And, as previously held in this matter, the case of *Shaffer v. Heitner*, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977), properly construed, holds that "where, as here, the action is properly categorized as 'true *in rem*,' there is no requirement that the owner or claimant of the res have minimum contacts with the forum. . . [and] it is not necessary that the allegedly infringing registrant have minimum contacts with the forum". *Id.* In sum, due process is not offended by adjudicating the rights to the cnnews.com domain name in an ACPA *in rem* claim where, as here, the domain name certificate is located in this district. While an order transferring the ownership of a domain name certificate within this jurisdiction may *affect* foreign contracts, it is accomplished by conduct wholly within this jurisdiction.[47]

be from the senior user's use. *See, e.g., Money Store v. Harriscorp Fin., Inc.*, 689 F.2d 666, 674 (7th Cir.1982); *Johanna Farms, Inc. v. Citrus Bowl, Inc.*, 468 F.Supp. 866, 876 (E.D.N.Y.1978).

**47.** *See supra* Part II.A.1.

## IV.

■ Maya HK argues that this case should be dismissed on *forum non conveniens* grounds because a court in Hong Kong, China would be better suited and situated to resolve the matter, as all the persons and entities involved in this matter-with the exception of plaintiff-are located in China. Furthermore, Maya HK asserts that it would be more convenient to have the trial in China as much of the evidence for this matter is located within China.

■ As a threshold matter, the motion to dismiss on *forum non conveniens* grounds is untimely. It is well-established that "a [party] must assert a motion to dismiss for *forum non conveniens* within a reasonable time after the facts or circumstances which serve as the basis for the motion have developed and become known or reasonably knowable to the [party]." *Trivelloni–Lorenzi v. Pan Am. World Airways, Inc.,* 821 F.2d 1147, 1165 (5th Cir. 1987) (citing 15 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice & Procedure* § 3828, 291 (2d ed.1986)), *vacated on other grounds sub nom. Pan Am. World Airways, Inc. v. Lopez,* 490 U.S. 1032, 109 S.Ct. 1928, 104 L.Ed.2d 400 (1989). Here, Maya HK waited at least eight months before raising this issue and, therefore, this motion to dismiss on grounds of *forum non conveniens* is untimely.

■ Quite apart from the timeliness issue, dismissal on *forum non conveniens* grounds is not appropriate on the merits. Indeed, this case adjudicates the rights of plaintiff, a domestic corporation, *vis a vis* a domain name, the certificate for which is located within this district. For Maya HK to prevail on its motion to dismiss on *forum non conveniens* grounds, it must show that "when weighed against plaintiff's choice of forum, the relevant public and private interests strongly favor a specific, adequate, and available alternative forum." *Kontoulas v. A.H. Robins Co.,* 745 F.2d 312, 315 (4th Cir.1984). No such showing has been or can be made in this case; to the contrary, as the ACPA itself reflects,[48] the relevant public and private interests favor this forum because it is the situs both of the domain name in issue and of the pertinent registry.[49]

## V.

For these reasons, summary judgment must be granted in favor of plaintiff with respect to its claim for trademark infringement under the ACPA. And, therefore, respondent Maya HK's motion for summary judgment must be denied. An appropriate order will issue.

---

48. *See* 15 U.S.C. § 1125(d)(2) *et seq.*

49. Indeed, to dismiss this action in favor of a Hong Kong forum on *forum non conveniens* grounds would very likely be tantamount to a conclusion that plaintiff, in these circumstances, should have no ACPA remedy, as there is little likelihood that a Hong Kong forum would enforce the ACPA and there is no reliable indication in this record that an equivalent remedy would be available there.

The *forum non conveniens* issue and the other issues this case addresses underscore the difficulties that inhere in the effort to use national laws to protect intellectual property rights and to police commercial activity on the global Internet. *See* Laurence R. Helfer & Graeme B. Dinwoodie, *Designing Non–National Systems: The Case of the Uniform Domain Name Dispute Resolution Policy,* 43 Wm. & Mary L.Rev. 141 (2001).