**EUROTECH, INC., et al., Plaintiffs,**

v.

**COSMOS EUROPEAN TRAVELS AKTIENGESELLSCHAFT, Defendant.**

**No. CIV.A. 01–1689–A.**

United States District Court, E.D. Virginia, Alexandria Division.

July 24, 2002.

---

**614**

Steven B. Ramsdell, Tyler Bartl Burke & Gorman P.L.C., Alexandria, VA, Ross E. Kimbarovsky, Ungartetti & Harris, Chicago, IL, Jeffery R. Williams, Ungartetti & Harris, Washington, DC, for Plaintiffs.

John Francis Cahill, Carter Ledyard & Milburn, Washington, DC, Rose Auslander, Walter Eliot Bard, Carter Ledyard & Milburn, New York, NY, for Defendants.

## MEMORANDUM OPINION

ELLIS, District Judge.

This is a dispute over the ownership of the domain name "cosmos.com." Plaintiffs, one of which is the current owner of the disputed domain name, seek a declaration confirming the propriety of their use and ownership of the domain name. Defendant, the owner of a registered trademark for the term "Cosmos," counterclaims against plaintiffs for trademark infringement and unfair competition in violation of the Lanham Act, 15 U.S.C. §§ 1114, 1125(a), cybersquatting in violation of the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d), and common law unfair competition.

The parties, having filed and fully briefed cross-motions for summary judgment, agree that the matter is now ripe for resolution on the current record and that a trial is unnecessary.

### I.

Plaintiffs Eurotech, Inc. ("Eurotech") and Eurotech Data Systems Hellas, Ltd. ("Hellas")[1] are two related entities that provide consumer and business exchange information and technology services via the Internet to various businesses. Hellas, a Greek corporation with its principal place of business in Athens, Greece is a subsidiary of Eurotech, an Illinois corporation with its principal place of business in Illinois. Eurotech's founder and owner is Dino Matingas, who is also the sole owner of Hellas.

Eurotech purchased the domain name, cosmos.com, in May 1998 from an individual unaffiliated with any of the parties in this dispute.[2] The record reveals that, in

---

1. Eurotech and Hellas are referred to collectively as "plaintiffs."

2. The domain name, cosmos.com, was registered with Network Solutions, Inc. (NSI) on

the course of making this purchase, Eurotech did not conduct a trademark search to determine whether the mark "Cosmos" was already registered or in use as a trademark or trade name. Eurotech claims that since acquiring the cosmos.com domain name in 1998, it has operated under the Cosmos.com name. Then, in March 2002, Eurotech changed its business name to CosmoTravels.com, Inc. Undisputed record evidence reveals that plaintiffs were not actively in business prior to purchasing the cosmos.com domain name and posting travel-related information at that Internet address.

Defendant Cosmos European Travels Aktiengesellschaft is a privately-held Liechtenstein company that is part of a privately-held family of companies under common ownership. It appears from the record that defendant's role in this family of companies is, in part, to serve as a holding company to administer trademark applications and registrations for the "Cosmos" mark. In this role, defendant filed applications in the United States Patent and Trademark Office (PTO) to register the marks "Cosmos" and "Cosmos Tourama" for "conducting travel tours" in the United States Patent and Trademark Office (PTO) on March 18, 1987. Registrations on these applications issued on November 10, 1987 under registration numbers 1,464,902 and 1,464,901, respectively.[3] These registrations became incontestable pursuant to 15 U.S.C. § 1065 on July 28, 1993, when the PTO accepted and acknowledged the appropriate affidavits.[4] As early as 1995, defendant licensed the "Cosmos" mark to another member of defendant's family of companies, Tourama, Ltd., a Bahamian company. Tourama, in turn, also as early as 1995, sublicensed the mark to yet another member of this business family, Group Voyagers, Inc. (GVI), a subsidiary of defendant,[5] for use in the United States in connection with the business of selling or conducting travel tours. Uncontroverted evidence shows that GVI's use of the "Cosmos" mark is pursuant to the conditions contained in the license and under the supervision and control of the majority owners of defendant's group of companies.

It is further undisputed that defendant's efforts to promote the "Cosmos" mark, chiefly through its affiliate, GVI, have been both substantial and substantially successful. Specifically, these efforts are as follows:

- In the past four years, GVI has spent over $32 million on marketing and promotion involving the "Cosmos" mark. These marketing and promotional activities have included magazine advertising, co-operative advertising, attendance at trade shows, and distributing brochures.

September 21, 1994. NSI has since been acquired by Verisign Global Registry Services. Verisign, located in Herndon, Virginia, continues to operate as one of a number of domain name registrars and the sole registry for all ".com" domain names.

3. Defendant has also registered these marks in the United Kingdom, Canada, and Australia for use in connection with its business of selling and conducting travel tours.

4. Section 1065(4) provides that
the incontestable right with reference to a mark registered under this chapter shall apply to a mark registered under the Act of March 3, 1881, or the Act of February 20, 1905, upon the filing of the required affidavit with the Director within one year after the expiration of any period of five consecutive years after the date of publication of a mark
15 U.S.C. § 1065(4). *See also infra* notes 14–15 and accompanying text.

5. Defendant, Tourama, and GVI all are under the controlling ownership of trusts controlled by three individuals: Sergio Mantegazza, Mario Albek, and Geo Mantegazza.

GVI has also used the "Cosmos" mark on a variety of items, such as brochures, stationery letterhead, envelopes, post cards, luggage tags, and travel portfolios.

● GVI also uses the "Cosmos" mark on the Internet, where it and its affiliated entities use websites at the domain names cosmosvacations.com and globusandcosmos.com for the purpose of promoting its services by providing travel information for travel arrangements of clients and potential clients. These websites provide United States residents with information on booking travel and vacation reservations.

● GVI has enjoyed significant successes in marketing and providing travel and vacation tours under the "Cosmos" mark. In the past five years alone, sales in the United States of "Cosmos" brand tours have exceeded $400 million.

● There has been substantial unsolicited media coverage of the Cosmos companies and "Cosmos" brand services in publications, such as *Forbes*.

In 2001, Matingas, plaintiffs' owner, approached GVI, proposing that plaintiffs, using the cosmos.com domain name, could serve as vendors or distributors for defendant, and asked that GVI pay Eurotech $250,000 up front, and $100,000 quarterly, for five years. Matingas's rationale for this proposal was that plaintiffs had received Internet inquiries at their cosmos.com site from consumers mistakenly seeking defendant's travel tour services and thus GVI should be willing to pay plaintiffs to reap the benefits of this consumer interest. After some negotiation, GVI's director of marketing rejected the proposal. Matingas responded with a second offer, pursuant to which GVI, as vendor, would pay Eurotech, as distributor, a $20,000 "one-time fee" and a $10,000 monthly charge in return for which plaintiffs would release the most appropriate email messages it received from customers mistakenly seeking to contact defendant via the cosmos.com website. This discussion, too, eventually ended with no deal being struck between GVI and plaintiffs.

A review of the cosmos.com website and websites to which it is linked, including cosmotravels.com, reveals prominent use of the terms "Cosmos.com" and "Cosmotravels" in connection with the travel information services posted on those sites.[6] More specifically, plaintiffs' various websites exhibit the following features:

● all pages currently appearing on the cosmos.com or cosmotravels.com website contain some material that is related to travel or tourism;

● below the text "cosmotravels.com front page" on the cosmos.com or cosmotravels.com website is the text "travel reservations," "vacations," "cruises," and "destination guides;"

● below the text "cosmotravels.com front page" on the cosmos.com or cosmotravels.com website is a banner with the text "Vacations," "Cruises," "Hotels," and "Airlines."

● if the cursor is placed on the text "Vacations," "Cruises," "Hotels," or "Airlines" on the cosmos.com or cosmotravels.com website, the names of different vacation, cruise, hotel, or airline packages scroll across the screen.

Although plaintiffs do not offer travel tours through their websites, the undisputed record reflects that these websites provide travel information and, according to the website itself, serve as an "On-line

---

**6.** Record evidence reveals that all plaintiffs' travel-related information has been directly available at cosmos.com, but that within the past two months, plaintiffs moved that content from cosmos.com to cosmotravels.com and cosmotravels.com/index1.html, two websites that are linked to cosmos.com.

Market Place for the Travel Industry by Third Party Sellers of Goods and or Services," which permits third-party businesses to offer their products and services. The record also reflects that Eurotech owns twenty-five domain names that are similar to the "Cosmos" mark.[7]

On July 20, 2001, defendant filed a complaint with the World Intellectual Property Organization (WIPO) in accordance with the Uniform Domain Name Dispute Resolution Policy (UDRP).[8] In its WIPO complaint against Hellas, defendant asserted a claim for trademark infringement based on allegations (i) that defendant had consistently used its registered trademarks "Cosmos" and "Cosmos Tourama;" (ii) that the cosmos.com domain name was identical to its "Cosmos" trademark, and confusingly similar to defendant's "Cosmos Tourama" trademark; and (iii) that Hellas used the cosmos.com domain name as an integral part of a travel business that competes directly with defendant's business. Defendant further claimed that Hellas had no rights or legitimate interest in the cosmos.com domain name and that the domain name was registered and used in bad faith. The relief defendant sought was an order transferring ownership to defendant of the registrar certificate for cosmos.com.

■ In the WIPO proceeding, defendant also alleged that Hellas offered to sell the cosmos.com domain name to defendant, an allegation Hellas disputed. After Hellas filed its response denying that an offer of sale had been made, defendant was allowed to amend its complaint to withdraw this allegation. Although the WIPO arbitrator[9] allowed defendant to amend the complaint, he declined to give Hellas the opportunity to respond to the amended complaint. On the basis of the arbitration record, the arbitrator ruled that the domain name cosmos.com should be transferred to defendant (i) because the domain name cosmos.com was identical or confusingly similar to defendant's registered trademarks "Cosmos" and "Cosmos Tourama;" (ii) because there was evidence that Hellas was commonly known by the name "Cosmos.com;" and (iii) because Hellas's use of the cosmos.com domain name was not legitimate or fair. *See* WIPO Case No. D2001–0941.[10] Thus, on October 22, 2001, Hellas was notified by Verisign that unless it commenced a lawsuit by 5 p.m., November 5, 2001, the domain name cos-

7. These domain names include cosmos.com, cosmosnews, cosmobusiness, cosmofinance, cosmoscitech, cosmosports, cosmoshow, cosmokids, cosmoreligion, cosmohealth, cosmohome, cosmostyle, cosmoarts, cosmotravels, cosmogovern, cosmostransport, cosmoedu, cosmoradio, cosmoweather, cosmotvc, cosmovvtel, cosmocommerce, cosmopolis, cosmonetshow, and mycosmos.

8. On October 24, 1999, the Internet Corporation for Assigned Names and Numbers (ICANN) adopted the Uniform Domain Name Dispute Resolution Policy, which effectively altered all contracts between domain name registrars and their customers, mandating the use of WIPO arbitration to resolve domain name disputes before resorting to litigation in United States courts. Plaintiffs do not dispute this, nor do they dispute that the agree-

ment with Verisign for the cosmos.com domain name now mandates a WIPO arbitration proceeding.

9. The complaint was assigned to a sole arbitrator, an attorney from the United Kingdom, the location of defendant's principal place of business.

10. Worth noting here is that the result reached in the WIPO proceeding is neither admissible, nor entitled to any deference, with respect to the merits issues presented in this suit. Review here must be *de novo* and independent of any WIPO panel conclusion. *See International Bancorp v. Societe Des Baines De Mer Et Du Cercle Des Etrangers A Monaco*, 192 F.Supp.2d 467, 475 n. 16 (E.D.Va.2002) (citing *Parisi v. Netlearning, Inc.*, 139 F.Supp.2d 745, 752 (E.D.Va.2001)).

mos.com would be transferred to defendant.

To avoid the transfer, plaintiffs filed this complaint against defendant, asserting the following claims:

(i) declaratory relief with respect to the domain name cosmos.com;

(ii) unlawful conversion;

(iii) tortious interference with prospective economic advantage; and

(iv) abuse of process.

Defendant responded with a motion seeking threshold dismissal of counts (iii) and (iv), which motion was granted. *See Eurotech, Inc. v. Cosmos European Travels Aktiengesellschaft*, 189 F.Supp.2d 385, 390–94 (E.D.Va.2002).[11] Defendant also filed a counterclaim, alleging that plaintiffs

(i) engaged in trademark infringement and unfair competition under the Lanham Act, 15 U.S.C. §§ 1114, 1125(a);

(ii) engaged in common law unfair competition; and

(iii) violated the Anticybersquatting Consumer Protection Act (ACPA), 15 U.S.C. § 1125(d).

Plaintiffs filed a motion to dismiss defendant's counterclaim and a motion to strike defendant's affirmative defenses, both of which were denied. *See Eurotech*, 189 F.Supp.2d at 389. The parties thereafter completed discovery and then filed various miscellaneous motions as well as cross-motions for summary judgment. The miscellaneous motions were resolved[12] and the cross motions for summary judgment are now ripe for resolution as the parties have fully briefed the issues and waived oral argument. *See Eurotech, Inc. v. Cosmos European Travels Aktiengesellschaft*, Civil Action No. 01–1689–A (E.D.Va. July 2, 2002) (order).[13] At issue on summary judgment are the following claims:

(i) plaintiffs' claim for declaratory relief with respect to the domain name cosmos.com;

(ii) defendant's claim of trademark infringement and unfair competition in violation of the Lanham Act, 15 U.S.C. §§ 1114, 1125(a);

(iii) defendant's claim of common law unfair competition; and

(iv) defendant's claim of cybersquatting in violation of the ACPA, 15 U.S.C. § 1125(d).

## II.

Summary judgment is appropriately granted where the movant shows "that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Rule 56(c), Fed.R.Civ.P.; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548,

---

**11.** The tortious interference and abuse of process claims were dismissed because (i) plaintiffs were unable to establish the necessary elements of their claims; (ii) the *Noerr–Pennington* doctrine confers immunity to defendant's seeking WIPO redress to protect its mark; and (iii) plaintiffs' prior agreement to submit to a WIPO proceeding precluded their claims. *See Eurotech*, 189 F.Supp.2d at 390–94.

**12.** The motions were resolved as follows (i) plaintiffs' motion to strike expert report and bar expert testimony of defendant's expert, Michael Rappeport, was denied; (ii) plaintiffs' motion to strike defendant's reply brief in support of defendant's motion for summary judgment was denied; (iii) defendant's motion to withdraw its claims for a monetary award was granted; (iv) plaintiffs' claim for unlawful conversion was dismissed; and (v) defendant's motion to strike jury demand was granted. *See Eurotech, Inc. v. Cosmos European Travels Aktiengesellschaft*, Civil Action No. 01–1689–A (E.D. Va. July 12, 2002) (order).

**13.** The parties reiterated during oral argument on July 12, 2002 that the case should be adjudicated on the existing summary judgment record.

91 L.Ed.2d 265 (1986). To survive a motion for summary judgment, the nonmoving party must come forward with evidence sufficient to establish the existence of every element essential to its case on which it bears the burden of proof at trial, even if the moving party presents no evidence. *See id.* at 321–24, 106 S.Ct. 2548. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). A "mere scintilla" of evidence is not enough to defeat summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

### III.

■ Defendant first claims that plaintiffs' use in American commerce of the term "Cosmos" in the cosmos.com domain name and on websites constitutes infringement of defendant's "Cosmos" and "Cosmos Tourama" marks in violation of the Lanham Act, 15 U.S.C. §§ 1114, 1125(a). To prevail on this trademark infringement and unfair competition cause of action, defendant must prove the following elements:

(i) that defendant possesses a protectible mark;

(ii) that plaintiffs used the mark;

(iii) that plaintiffs' use of the mark occurred "in commerce;"

(iv) that plaintiffs used the mark "in connection with the sale, offering for sale, distribution, or advertising" of goods or services; and

(v) that plaintiffs used the mark in a manner likely to confuse consumers.

*People for the Ethical Treatment of Animals v. Doughney*, 263 F.3d 359, 364 (4th Cir.2001); *see also* 15 U.S.C. §§ 1114, 1125(a).[14]

■ Elements two through four are plainly met here. Thus, there is no dispute that plaintiffs used the "Cosmos" mark both as a domain name and on websites.[15] Furthermore, there can be no dispute that plaintiffs' use of the mark occurred in American commerce. Indeed, maintaining a website that provides commercial information originally supplied by third-party companies clearly satisfies the "use in commerce" requirement. *See Cable News Network L.P., L.L.L.P. v. CNNEWS.com*, 177 F.Supp.2d 506, 516–18 (E.D.Va.2001). And further, it is also clear that plaintiffs use the "Cosmos" mark in connection with the distribution of travel and tourism information services. Only elements (i) and (v) are seriously contested here and thus defendant's trademark infringement claim depends on whether the undisputed record establishes as a matter of law that defendant possesses a protectible mark and whether plaintiffs' domain name cosmos.com is likely to cause confusion among consumers.

**14.** These five criteria establish a claim by a registered mark holder for trademark infringement and unfair competition pursuant to Sections 1114 and 1125(a). *See Doughney,* 263 F.3d at 364.

**15.** Although plaintiffs no longer provide travel information at the website found at the cosmos.com domain name, *see supra* note 6, such a move does not absolve plaintiffs from any liability they may have incurred. To begin with, cosmos.com still provides travel related information in the form of the prominent link to cosmotravels.com, which along with related websites, contains travel information. Further, it is well-established that "a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." *City of Mesquite v. Aladdin's Castle, Inc.,* 455 U.S. 283, 289, 102 S.Ct. 1070, 71 L.Ed.2d 152 (1982); *see also American Legion Post 7 of Durham, N.C. v. City of Durham,* 239 F.3d 601, 605 (4th Cir.2001) (same). Thus, plaintiffs have not shielded themselves from liability by moving the direct travel-related links from cosmos.com to cosmotravels.com.

As an initial matter, the record evidence reflects that defendant's registered marks, "Cosmos" and "Cosmos Tourama" are incontestable. Incontestability is "conclusive evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce." 15 U.S.C. § 1115(b); *see also Lone Star Steakhouse & Saloon, Inc. v.' Alpha of Virginia, Inc.*, 43 F.3d 922, 930 (4th Cir.1995). A registrant's right to use a mark may become incontestable after five years of continuous and unchallenged use, if such use has been averred to in an affidavit filed with the PTO within one year after the five-year period. *See* 15 U.S.C. § 1065, *Lone Star*, 43 F.3d at 930. Here, it is undisputed that defendant did precisely this for the marks "Cosmos" and "Cosmos Tourama."

 Merely establishing a mark's incontestability does not, alone, mean that the mark is protectible. *See Lone Star*, 43 F.3d at 930; 5 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 32:147 (4th ed.1998) (hereinafter "McCarthy"). Incontestability, however, forecloses challenges that the mark is not inherently distinctive or that it

lacks secondary meaning.[16] It also precludes a claim that the mark is not owned by the registrant because it is inferior in priority to plaintiffs' previously used mark. *See* McCarthy § 32:148.

Although defendant has met the requirements for incontestability for the marks "Cosmos" and "Cosmos Tourama," plaintiffs, as putative infringers, may challenge incontestability by bearing the burden of showing one or more of the following nine statutory exceptions to incontestability:

(i) fraud in obtaining the registration or the status of incontestability;

(ii) abandonment;

(iii) use of the mark to misrepresent its source;

(iv) "fair use" of the mark;

(v) limited territory defense of an intermediate junior user;

(vi) prior registration of plaintiffs;

(vii) use of the mark to violate federal antitrust law;

(viii) that the mark is functional; and

(ix) equitable defenses such as laches, estoppel, and acquiescence.

*See* 15 U.S.C. § 1115(b); *Lone Star*, 43 F.3d at 930.[17] Here, plaintiffs assert only exceptions (i) and (ii). Thus, plaintiffs argue (i) that defendant engaged in fraud to obtain both the registrations and the

---

**16.** Notwithstanding the issue of incontestability, it is quite apparent that the marks "Cosmos" and "Cosmos Tourama" are distinctive, not generic, and therefore protectable under the Lanham Act. Indeed, because it is clear that these marks are either arbitrary or suggestive, they are deemed distinctive without requiring a showing of secondary meaning. *See Washington Speakers Bureau, Inc. v. Leading Authorities, Inc.*, 33 F.Supp.2d 488, 494 (E.D.Va.1999) (holding that both arbitrary and suggestive marks are deemed distinctive and are afforded the highest protections under the Lanham Act).

Plaintiffs argue that because the term "Cosmos" is, ostensibly, a commonly-used term, the mark "Cosmos" is generic. This is not so;

simply because a word is commonly-used does not render it generic. Rather, many commonly-used terms receive Lanham Act protection within a particular industry: "Delta" faucets, "Polo" clothing, and "Apple" computers.

**17.** A distinguished commentator has also noted that while the generic nature of a term is not on the Section 1115(b) list, the Lanham Act also requires that no incontestable right shall be acquired in a generic name. *See* McCarthy § 32:149. *Cf. Lone Star*, 43 F.3d at 930 (not recognizing this additional exception). In any event, the terms "Cosmos" and "Cosmos Tourama" are not generic. *See infra* note 16.

marks' incontestable status and (ii) that defendant abandoned its rights in the "Cosmos" and "Cosmos Tourama" marks. Neither argument has merit. First, plaintiffs have adduced no evidence that defendant's registration and the status of incontestability were the product of fraud on the PTO. They also have not met their burden of showing by clear and convincing evidence [18] defendant's abandonment of the marks.[19]

█ The Lanham Act provides that a mark is deemed abandoned "[w]hen any course of conduct of the registrant, including acts of omission as well as commission, causes the mark to lose its significance as an indication of origin." 15 U.S.C. § 1127(b). Here, plaintiffs claim defendant abandoned its rights in the "Cosmos" and "Cosmos Tourama" marks by its uncontrolled or "naked" licensing of the marks to defendant's family of companies. While it is true that so-called "naked" or uncontrolled licencing can result in abandonment, nothing of the sort has been shown here. Under the Lanham Act, "naked (or uncontrolled) licensing of a mark occurs when a licensor allows a licensee to use the mark on any quality or type of good [or service] the licensee chooses." *Stanfield v. Osborne Industries, Inc.*, 52 F.3d 867, 871 (10th Cir.), *cert. denied*, 516 U.S. 920, 116 S.Ct. 314, 133 L.Ed.2d 217 (1995). Here, the undisputed record shows that far from "naked" licensing, all use of defendant's mark by Tourama or GVI occurred pursuant to licenses that closely regulated such use and under the control and supervision of the majority owners of defendant's group of companies.[20] For instance, defendant's licensing agreements prohibit use of the "Cosmos" mark in connection with businesses unrelated to travel. In sum, defendant has clearly established the incontestability of "Cosmos" and "Cosmos Tourama" and plaintiffs have not met their burden of establishing the contrary.

█ The final element of a claim of unfair competition and trademark infringement under Sections 1114 and 1125(a) is whether the record shows that plaintiffs' unauthorized use of the terms "Cosmos" or "Cosmos Tourama" creates a likelihood of confusion for an "ordinary consumer as to the source or sponsorship of the [services]," in this case travel tour services. *See Anheuser–Busch, Inc. v. L & L Wings, Inc.*, 962 F.2d 316, 318 (4th Cir. 1992) (internal quotation marks omitted). Although a showing of "incontestability affects the validity of [defendant's] trademark, [it] does not establish the likelihood of confusion necessary to warrant protection from infringement." *Lone Star*, 43 F.3d at 935. Rather, "[l]ikelihood of con-

---

**18.** Plaintiffs are required to prove abandonment by "clear and convincing evidence." McCarthy § 17:12.

**19.** Even if a mark somehow loses its incontestable status, it may still be found to be protectible if the remaining requirements of Section 1125(a) are met. *See* McCarthy § 31:60 (noting that a mark holder's "separate federal rights in unregistered marks under [Section 1125(a)] continue unabated even if a registration is disregarded or cancelled"); *see also Orient Express Trading Co. v. Federated Dep't Stores, Inc.*, 842 F.2d 650 (2d Cir. 1988) (holding that fraud in the registration process leading to cancellation of registra-

tions does not bar possible relief based upon a [Section 1125(a)] claim for infringement of unregistered rights). Thus, even if defendant's "Cosmos" mark were unregistered, the mark would still be protectible because it is "arbitrary" or "suggestive." Such marks are categorically deemed distinctive and therefore entitled to the highest level of protection. *See supra* note 16.

**20.** This lack of "naked" licensing distinguishes the case at bar from *CNA Financial Corp. v. Brown*, 922 F.Supp. 567, 574 (M.D.Fla.1996), the case plaintiffs cite in support of their claim of abandonment.

sumer confusion remains an independent requirement for trademark infringement." *Id.* And, determining whether a putative infringer's actions create a likelihood of confusion requires consideration of the following factors:

 (i) the strength of the mark;

 (ii) the similarity between the alleged infringer's domain name and/or use and the mark;

 (iii) the similarity between defendant's services and the services provided at the domain name;

 (iv) the similarity between the facilities defendant uses in its business and the facilities used in connection with the provision of services under the disputed domain names;

 (v) the similarity between defendant's advertising and advertising used to promote services offered by plaintiffs;

 (vi) plaintiffs' intent underlying use of the mark; and

 (vii) the existence of any actual confusion.

*See Petro Stopping Centers, L.P. v. James River Petroleum, Inc.*, 130 F.3d 88, 91 (4th Cir.1997) (citing *Pizzeria Uno Corp. v. Temple*, 747 F.2d 1522, 1527 (4th Cir. 1984)). These factors are neither exhaustive nor exclusive. *See Pizzeria Uno*, 747 F.2d at 1527.[21]

Because six of the seven *Petro Stopping* factors weigh in defendant's favor, a likelihood of confusion is convincingly established.[22] As an initial matter, there can be no doubt that the first factor points toward a likelihood of confusion: the terms "Cosmos" and "Cosmos Tourama" are strong because their registrations are incontestable and the marks themselves, which are arbitrary or suggestive, are distinctive. The second factor—that of similarity between the alleged infringer's domain name or use of the mark and the mark itself—also weights heavily, if not conclusively, in favor of a likelihood of confusion. Indeed, plaintiffs' domain names, such as "cosmos.com" and "cosmo-travels.com" are virtually identical to defendant's "Cosmos" mark. It also appears that defendant's services are essentially similar to those services provided at the cosmos.com domain name or at related sites to which cosmos.com provides a link. Indeed, defendant conducts travel tours and plaintiffs' websites provide travel information. The fourth factor—similarity of facilities—also weighs in favor of a finding of likelihood of confusion: plaintiffs use the Internet, specifically the cosmos.com domain name and related websites, to offer their travel-related services. Similarly, uncontradicted record evidence shows that

**21.** It is also well-established that although "the likelihood of confusion is factual issue dependent on the circumstances of each case..., summary judgment is appropriate when the material, undisputed facts disclose a likelihood of confusion," a determination that courts make in light of the seven factors. *Resorts of Pinehurst, Inc. v. Pinehurst Nat. Corp.*, 148 F.3d 417, 422 (4th Cir.1998). Thus, although likelihood of confusion is a factual issue, "weighing the seven factors that determine likelihood of confusion is a judicial function." *International Bancorp*, 192 F.Supp.2d at 483 (citing *Pinehurst*, 148 F.3d at 422). Furthermore, in determining whether a likelihood of confusion exists, courts should consider the specific facts and circum-

stances of each case. *See Anheuser–Busch*, 962 F.2d at 318.

**22.** The burden falls upon defendant, the putative senior mark holder, to establish likelihood of confusion. Defendant argues that this burden ought to fall upon plaintiffs because they have engaged in copying defendant's mark. For the burden to shift to plaintiffs, however, such copying must be shown to be intentional. *See Larsen v. Terk Technologies Corp.*, 151 F.3d 140, 149 (4th Cir.1998); *International Bancorp*, 192 F.Supp.2d at 483. Because the evidence of intentional copying is not compelling, the analysis here proceeds with defendant as the party bearing the burden of proving likelihood of confusion.

defendant uses the Internet to offer travel-related services. And, although there is no evidence that plaintiffs engaged in advertising, this lack of advertising suggests that plaintiffs sought to obtain a free ride off the goodwill of defendant's registered trademarks. The final factor, existence of actual confusion, also points convincingly toward a likelihood of confusion. Indeed, Matingas attempted to entice GVI to enter into an agreement with plaintiffs with the promise of forwarding scores of email messages or web hits from confused consumers who mistakenly thought they were communicating with defendant.

In sum, defendant has established a strong likelihood of confusion and, therefore, has proven all the necessary elements of unfair competition and trademark infringement pursuant to 15 U.S.C. §§ 1114, 1125(a).[23]

## IV.

█ Next, defendant alleges that plaintiffs' use of the "Cosmos" and "Cosmos Tourama" marks violates the *in personam* provisions of the ACPA, 15 U.S.C. § 1125(d)(1). The ACPA imposes liability in a civil action on a person by the owner of a mark if, without regard to the goods or services of the parties, that person

(i) has a bad faith intent to profit from that mark and

(ii) registers, traffics in, or uses a domain name that-

(I) in the case of a mark that is distinctive at the time of registration of the domain name, is identical or confusingly similar to that mark; [or]

(II) in the case of a famous mark that is famous at the time of registration of the domain name, is identical or confusingly similar to or dilutive of that mark . . . .

15 U.S.C. § 1125(d)(1)(A). Thus, for defendant to succeed in this *in personam* ACPA claim, it must prove the following two elements: (i) that plaintiffs' use of cosmos.com and other related domain names constitutes either trademark infringement or trademark dilution and (ii) that plaintiffs have or had a bad faith intent to profit from use of the "Cosmos" or "Cosmos Tourama" marks. *See Doughney*, 263 F.3d at 366–68. As reflected in Part III, *supra*, defendant has established the first element; plaintiffs' use of cosmos.com infringes defendant's registered marks pursuant to 15 U.S.C. §§ 1114(a), 1125. It remains, therefore, to determine whether this summary judgment record establishes that plaintiffs acted in bad faith by registering the cosmos.com domain name.

█ The ACPA lists nine nonexclusive factors for courts to consider in determining whether a domain name has been registered or used in bad faith.[24] Although

23. The same proof establishes trademark infringement and unfair competition under Sections 1114 and 1125(a).

24. The ACPA bad faith factors are:

(1) the trademark or other intellectual property rights of the registrant, if any, in the domain name;

(2) the extent to which the domain name consists of the legal name of the person or a name that is otherwise commonly used to identify that person;

(3) the person's prior use, if any, of the domain name in connection with the bona fide offering of any goods or services;

(4) the person's bona fide noncommercial or fair use of the mark in a site accessible under the domain name;

(5) the person's intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark;

(6) the person's offer to transfer, sell, or otherwise assign the domain name to the

courts are not obliged to consider every factor and may also consider factors not listed in Section 1125(d)(1)(B)(i), the statutory factors are typically what courts use to determine bad faith. *See International Bancorp v. Societe Des Baines De Mer Et Du Cercle Des Etrangers A Monaco*, 192 F.Supp.2d 467, 485 (E.D.Va.2002); *CNNEWS.com*, 177 F.Supp.2d at 522. Each factor addresses whether there is some legitimate reason for the registrant or user of a domain name to possess or make use of the disputed domain name. *See id.*

The first factor is whether plaintiffs have any legitimate rights in the "Cosmos" and "Cosmos Tourama" marks. *See* 15 U.S.C. § 1125(d)(1)(B)(i)(I). On this issue the undisputed record reflects the following: (i) defendant registered and obtained an incontestable trademark for "Cosmos" and "Cosmos Tourama" in 1993, long before plaintiffs purchased the domain name cosmos.com in 1998; and (ii) plaintiffs did not conduct a trademark search before purchasing the disputed domain name. Had plaintiffs done so, they would have discovered defendant's registration of the marks. It follows that plaintiffs have no rights in these marks. This factor, therefore, weighs in favor of a finding of bad faith.

The second factor is whether the terms "Cosmos" or "Cosmos Tourama" constitute a legal name or commonly-used name of plaintiffs. *See* 15 U.S.C. § 1125(d)(1)(B)(i)(II). They do not; neither term consisted of the legal or commonly-used name of plaintiffs prior to the acquisition of the cosmos.com domain name. Although Eurotech has now evidently changed its name to CosmoTravels.com, Inc., this name change does not allow plaintiffs to escape liability.[25] If such a name change could preclude a finding of bad faith, an entity could escape the effect of the ACPA simply by registering an infringing domain name and then changing its business name to match the infringing domain name. Thus, the second factor also supports a finding of bad faith.

The third factor is whether plaintiffs engaged in prior, bona fide use of the "Cosmos" and "Cosmos Tourama" marks. *See* 15 U.S.C. § 1125(d)(1)(B)(i)(III). They did not; there is no evidence in this record that plaintiffs used these marks in connection with providing travel-related services at any time prior to defendant's registration and use of its marks for this purpose. Accordingly, the third factor also weighs in favor of a finding of bad faith.

The fourth factor—whether plaintiffs engaged in any bona fide noncommercial or "fair use" of the marks at issue—does not operate in plaintiffs' favor here. *See* 15 U.S.C. § 1125(d)(1)(B)(i)(IV). It is established that "[t]he purpose of this factor is to protect domain name registrants and users engaged in protected activities, such

mark owner or any third party for financial gain without having used, or having intent to use, the domain name in the bona fide offering of any goods or services or the person's prior conduct indicating a pattern of such conduct;

(7) the person's provision of material and misleading false contact information when applying for the registration of the domain name, the person's intentional failure to maintain accurate contact information, or the person's prior conduct indicating a pattern of such conduct;

(8) the person's registration or acquisition of multiple domain names that the person knows are identical or confusingly similar to the distinctive marks of others or are dilutive of the famous marks of others; and

(9) the extent to which the mark incorporated in the domain name is distinctive and famous within the meaning of the Federal Trademark Dilution Act.

*See* 15 U.S.C. § 1125(d)(1)(B)(i).

**25.** *See supra* note 15.

as political criticism." *International Bancorp*, 192 F.Supp.2d at 486; *see also CNNEWS.com*, 177 F.Supp.2d at 525. It is abundantly clear that plaintiffs' websites do not reflect any such protected conduct and, therefore, this factor does not help plaintiffs avoid a finding of bad faith.

The fifth factor is whether plaintiffs intended to divert consumers from defendant's online location to a website accessible at one of the disputed domain names that could harm the goodwill of defendant's mark, either for commercial gain or with the intent to tarnish or disparage the mark by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the website. *See* 15 U.S.C. § 1125(d)(1)(B)(i)(V). In this regard, it is important to note that, "[a]s intent is rarely discernible directly, it must typically be inferred from pertinent facts and circumstances." *International Bancorp*, 192 F.Supp.2d at 486. On this point, defendant notes that plaintiffs received a significant number of Internet inquiries from defendant's potential consumers. While this is evidence of actual confusion, there is no convincing evidence that plaintiffs intended to divert such consumers. Thus, this factor does not point to a finding of bad faith.

The sixth factor—whether plaintiffs offered to transfer or sell a disputed domain name for financial gain without having an intent to use it in the bona fide offering of any goods or services—is a close question. *See* 15 U.S.C. § 1125(d)(1)(B)(i)(VI). While it may appear that plaintiffs are offering legitimate, travel-related services on their website (even if those services do infringe defendant's marks), it also appears that plaintiffs tried to sell GVI access to the cosmos.com website for a substantial fee, which suggests that this offer to sell to defendant may have been plaintiffs' real or principal reason for acquiring the domain name. Indeed, that plaintiffs

failed to conduct a trademark search prior to buying the disputed domain name and then received communications at cosmos.com seeking defendant's services all weigh in favor of a finding of bad faith. In sum, whether this factor supports a finding of bad faith is a close question.

The seventh factor is whether plaintiffs provided material and misleading false contact information when applying for the registration of the disputed domain name. *See* 15 U.S.C. § 1125(d)(1)(B)(i)(VII). Because there is no evidence of plaintiffs' supplying any misleading information, this factor does not support a finding of bad faith.

The eighth factor is whether plaintiffs registered or acquired multiple domain names that they knew were identical or confusingly similar to the distinctive marks of others. *See* 15 U.S.C. § 1125(d)(1)(B)(i)(VIII). Defendant contends that plaintiffs' registration of twenty-five domain names that contain the term "Cosmos" is sufficient to satisfy this factor. Yet, of all the additional registered domain names, only two use the term "cosmos" together with a word connoting or describing travel. Furthermore, there is no record evidence of plaintiffs' registering domain names containing trademarks other than "Cosmos." Thus, this factor does not militate strongly in favor of bad faith, but does not negate bad faith either. *Cf. International Bancorp*, 192 F.Supp.2d at 487 (holding that the eighth bad faith factor was satisfied by the plaintiffs' registration of forty-three domain names employing both the disputed mark, "Monte Carlo," *and* referencing the industry in which the defendant used the mark, *i.e.*, gambling services).

The ninth factor—the extent to which the mark incorporated in the registrant's domain name is or is not distinctive and famous—supports a conclusion of bad faith. *See* 15 U.S.C. § 1125(d)(1)(B)(i)(IX).

Defendant's "Cosmos" mark clearly satisfies this factor as it is registered, incontestable, and distinctive. *See International Bancorp*, 192 F.Supp.2d at 487 (holding that a mark's distinctive nature is sufficient to satisfy this factor). Thus, defendant has clearly satisfied five of the nine ACPA factors and two others are close decisions.[26]

It is important to pursue the analysis of the issue of bad faith factor-by-factor, and it is significant that when this is done here, the factors on balance point persuasively to a finding of bad faith. It is equally important, however, to step back and examine the larger picture to determine whether it is consistent with a finding of bad faith.[27] It is. The larger picture does not reveal an ongoing business entity that, prior to purchasing a domain name, made a reasonable investigation to ensure that the name was non-infringing and then purchased a relatively obscure domain name. To the contrary, the big picture here reflects that plaintiffs did not engage in any business until they purchased the disputed domain name and when they did so, they made no effort to ascertain whether the "Cosmos" name was a registered trademark, as it then had been for eleven years. Nor did plaintiffs make any reasonable investigation to determine whether the name was used in the travel industry. Had plaintiffs conducted the proper inves-

tigation, they not only would have easily discovered that defendant had registered the "Cosmos" and "Cosmos Tourama" marks, but they also likely would have seen evidence of the fact that defendant had spent millions of dollars promoting the "Cosmos" mark and had succeeded in generating a large amount of revenue in the travel business ($400 million over five years). In the larger picture, these facts loom large, and it is hard to see how they could have been missed by plaintiffs. Furthermore, within three years of purchasing the cosmos.com domain name, plaintiffs, armed with the certain knowledge that many consumers thought the cosmos.com website belonged to defendant, sought to sell defendant space and access to the site for a substantial sum of money. This is closely akin to purchasing a domain name with an intent to exploit it by selling it to the registered owner of the trademark incorporated in the domain name. In sum, the big picture is fully consistent with a finding of bad faith.

Yet, even were there no ACPA violation, defendant's proof of unfair competition and trademark infringement under the Lanham Act is sufficient to provide defendant the relief it seeks, namely transfer of the cosmos.com domain name and an injunction against the use of "cosmos.com," "cosmotravels," "cosmotravels.com," or any other term confusingly similar thereto.[28]

---

**26.** It is also apparent that plaintiffs fall outside the ACPA's "safe harbor," which provides that "bad faith intent... shall not be found in any case in which the court determines that the person believed and had reasonable grounds to believe that the use of the domain name was a fair use or otherwise lawful." 15 U.S.C. § 1125(d)(1)(B)(ii). Nothing in the record reflects that plaintiffs meet this standard.

**27.** *See International Bancorp*, 192 F.Supp.2d at 485 (noting that it is permissible to look beyond the nine ACPA factors to determine whether a putative infringer acted with the

requisite bad faith); *CNNEWS.com*, 177 F.Supp.2d at 522 (same).

**28.** The Lanham Act, standing alone without the ACPA, is sufficient to order the transfer of domain names and the issuance of an injunction. *See Washington Speakers*, 33 F.Supp.2d at 488; McCarthy § 25:71.

Such a result does not render the ACPA meaningless, for it, *inter alia*, (i) reinforces the concept established in cases such as *Washington Speakers* that courts may transfer ownership of infringing domain names, (ii) provides an *in rem* cause of action, and (iii) provides a statutory damages remedy, pursu-

Put differently, even if plaintiffs' conduct does not run afoul the ACPA, defendant would still be entitled to the relief it seeks.

## V.

Defendant also asserts a state common law trademark infringement claim against plaintiffs, but neither party addresses which jurisdiction's substantive law applies or the appropriate elements.[29] For this reason, because the unfair competition laws of many states are similar to those of the Lanham Act,[30] and because federal law adequately provides the relief defendant seeks, it is unnecessary to address defendant's claim of common law unfair competition.

## VI.

Thus, plaintiffs engaged in unfair competition and trademark infringement, in violation of 15 U.S.C. §§ 1114, 1125(a), and cybersquatting, in violation of 15 U.S.C. § 1125(d). These statutory violations demonstrate that judgment on the counterclaims for defendant and against plaintiffs is appropriate with respect to the domain name cosmos.com and the following remedies should issue:

(i) transfer of the cosmos.com domain name to defendant and

(ii) issuance of an injunction against the use by plaintiffs and plaintiffs' successors in interest of "cosmos.com," "cosmotravels," "cosmotravels.com," or

---

ant to 15 U.S.C. § 1117(d), relief not sought by defendant here.

**29.** Of course, Virginia choice of law rules apply here. *See ITCO Corp. v. Michelin Tire Corp., Commercial Div.,* 722 F.2d 42, 49 n. 11 (4th Cir.1983) (holding that in federal question cases, a district court entertaining pendent state claims should follow the choice of law rules of the forum state) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941)); *Jones v. R.S. Jones and Assoc., Inc.,* 246 Va. 3, 431 S.E.2d 33, 34 (1993) (holding that Virgi-

---

any other term confusingly similar thereto in United States commerce.

Accordingly, plaintiffs' request for declaratory relief must be denied and their complaint dismissed with prejudice.

An appropriate Order has issued.

nia applies the *lex loci delicti,* the law of the place of the wrong); *Diaz Vicente v. Obenauer,* 736 F.Supp. 679, 690 (E.D.Va.1990) ("The rule of *lex loci delicti* is well-settled in Virginia; the place of the injury supplies the government law in tort actions.").

**30.** *See, e.g., Rubbermaid Commercial Products, Inc. v. Contico Intern., Inc.,* 836 F.Supp. 1247, 1262 (W.D.Va.1993) (holding that "the requirements for success on the merits of [a Virginia trademark] claim are substantially similar to those for the federal Lanham Act claim").