**VOLVO TRADEMARK HOLDING AB, et al., Plaintiffs,**

v.

**VOLVOSPARES.COM, Defendant.**

**No. 1:09cv1247 (AJT/IDD).**

United States District Court, E.D. Virginia, Alexandria Division.

April 1, 2010.

Gregory D. Phillips and Cody W. Zumwalt of Howard, Phillips & Andersen, Salt Lake City, UT, and William B. Cummings, William B. Cummings, P.C., Alexandria, VA, for Volvo.

### MEMORANDUM OPINION

ANTHONY J. TRENGA, District Judge.

This matter is before the Court on Plaintiffs' Motion for Summary Judgment (Doc. No. 9). In their motion, Plaintiffs Volvo Trademark Holding AB, AB Volvo, Volvo Car Corporation, and Volvo Cars of North America, Inc. (collectively, "Plaintiffs" or "Volvo") request that the Court order VeriSign Naming Services to change the registrant of the domain name in dispute, "volvospares.com" to Volvo Trademark Holding AB pursuant to the Anticybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1125(d)(2).

## I. BACKGROUND

Plaintiffs filed a Verified Complaint (the "Complaint") on November 5, 2009 alleging that volvospares.com, a website that sells Volvo used parts, is an unauthorized use of the Plaintiffs' registered VOLVO mark, that such use is likely to cause confusion, that such use dilutes and tarnishes the VOLVO mark, and that the mark is being used in bad faith and with the intent to profit.

Volvo mailed a copy of the Complaint via First Class Mail and email to the volvospares.com registrant, Ken White, ("White") and then published notice of the action on December 3, 2009 pursuant to a Court Order permitting service by publication. Defendant domain name volvospares.com (through White) was required to file a responsive pleading by December 23, 2009. No answer or other responsive pleading was filed by that date, although, as discussed *infra*, White mailed a document to the Court that was received on February 12, 2010 and another received on February 18, 2010.

## II. UNDISPUTED FACTS

The following facts are undisputed:

1. Volvo, along with Volvo's network of authorized dealers, sell Volvo goods and services, automobiles, parts, replacement parts, and other products related to Volvo. Volvo is a successful automobile manufacturer and is known worldwide.

2. Volvo Trademark Holding AB first obtained a trademark registration for VOLVO in 1956 and has obtained other registrations for VOLVO over the years.

3. Volvo has used the VOLVO mark continuously since its registration in adver-

tisements and promotions all over the world.

4. The VOLVO mark is a well recognized mark in the United States as a designation of a source of Volvo goods or services.

5. Volvo operates a number of websites using the VOLVO mark, including volvo.com and volvocars.com, to advertise its goods and services.

6. White registered volvospares.com on January 13, 1997, forty-one years after Volvo registered the VOLVO mark.

7. The website volvospares.com currently displays images of Volvo automobiles and advertises the sale of "new, used, and reconditioned Volvo parts."

8. Volvospares.com is used to conduct business offering for sale new and used parts in direct competition with authorized Volvo dealers and service centers.

9. Since receiving notice that his use of the domain name was being challenged, White has added a disclaimer on the volvospares.com website that states:

> DISCLAIMER: Volvospares.com has no affiliation with Volvo Group and makes no claim to or implication of being associated in any official business capacity in conjunction with or for such companies.

10. White altered the registrant name from "Cyberzone Ltd." with an address in the United Kingdom to "VolvoSpares" with an address in Spain after he was given actual notice that his use of the domain name was being challenged.

11. After White failed to respond to a series of demand letters, Volvo initiated an administrative process against White pursuant to the Uniform Domain Name Dispute Resolution Policy ("UDRP") and adjudicated by the World Intellectual Property Organization ("WIPO"). The panelist assigned to the case determined that volvospares.com was confusingly similar, but that Volvo did not establish that White's use of the domain name was in bad faith, a requirement under the UDRP, since there was no evidence in those proceedings that White misrepresented his business to customers or the public at large.

## III. STANDARD OF REVIEW

Summary judgment is appropriate only if the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Evans v. Techs. Apps. & Serv. Co.*, 80 F.3d 954, 958–59 (4th Cir. 1996). The party seeking summary judgment has the initial burden to show the absence of a material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). To defeat a properly supported motion for summary judgment, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 247–48, 106 S.Ct. 2505 ("[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.") (emphasis in original). Whether a fact is considered "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the

governing law will properly preclude the entry of summary judgment." *Id.* at 248, 106 S.Ct. 2505. The facts shall be viewed, and all reasonable inferences drawn, in the light most favorable to the non-moving party. *Id.* at 255, 106 S.Ct. 2505; *see also Lettieri v. Equant Inc.,* 478 F.3d 640, 642 (4th Cir.2007).

## IV. ANALYSIS

The Court has *in rem* jurisdiction in this matter over Defendant pursuant to 15 U.S.C. § 1125(d)(2)(A)(ii)(I) because (1) Plaintiffs cannot obtain *in personam* jurisdiction over the registrant, White, since he is located outside of the United States and (2) the domain name registry, VeriSign Naming Services, is located in this district.

To prevail in this ACPA claim on summary judgment, Plaintiffs must establish that there is no genuine issue of material fact as to the following elements: (1) White has a bad faith intent to profit from the VOLVO mark and (2) White registered or uses a domain name that "is identical or confusingly similar to or dilutive of" a famous mark. 15 U.S.C. § 1125(d)(1)(A). The Court finds that no genuine issue of material fact exists, and that summary judgment should be granted in favor of Plaintiffs.

### A. Whether there is a "bad faith intent to profit"

There is no applicable statutory definition of "bad faith" or "bad faith intent to profit." Rather, 15 U.S.C. § 1125(d)(1)(B) sets forth factors that a court may consider in assessing whether there is bad faith intent to profit, The factors relevant to this case are:

> (III) the person's prior use, if any, of the domain name in connection with the bona fide offering of any goods or services;

> \* \* \*

(V) the person's intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site;

> \* \* \*

(VII) the person's provision of material and misleading false contact information when applying for the registration of the domain name, the person's intentional failure to maintain accurate contact information, or the person's prior conduct indicating a pattern of such conduct; [and]

> \* \* \*

(IX) the extent to which the mark incorporated in the person's domain name registration is or is not distinctive and famous within the meaning of subsection (c).

A court is obligated to look at the individual circumstances of each case, and a court need not consider every factor in each case; instead the factors are intended to serve as a guide while the court carefully considers "whether the conduct at issue is motivated by a bad faith intent to profit." *Lamparello v. Falwell,* 420 F.3d 309, 319–320 (4th Cir.2005) (internal quotations omitted). Because "intent is rarely discernable directly, it must typically be inferred from pertinent facts and circumstances." *Int'l Bancorp, LLC v. Societe Des Baines De Mer Et Du Cercle Des Estrangers A Monaco,* 192 F.Supp.2d 467, 486 (E.D.Va.2002) (inferring bad faith intent in use of infringing domain name based on defendant's use of commonly recognized mark to divert business from rightful holder) *aff'd on other grounds,* 329 F.3d 359 (4th Cir.2003).

■ Applying the facts here to the factors listed in 15 U.S.C. § 1125(d)(1)(B), the Court finds and concludes that White was acting in bad faith with intent to profit from use of the VOLVO mark in volvospares.com. White intended to divert sales from authorized Volvo dealers, the VOLVO mark was registered long before White began using volvospares.com, and White should have known that he was infringing based on the distinctiveness of the VOLVO mark.

**B. Whether volvospares.com is a domain name that is "confusingly similar to or dilutive of" the VOLVO mark.**

■ As a preliminary matter, the Court concludes that the VOLVO mark is distinctive and famous. A mark is famous if it is "widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner." 15 U.S.C. § 1125(c)(2)(A). In determining whether a mark is famous, the Court may consider all relevant factors including: (1) the duration, extent, and geographic extent of advertising and publicity of the mark; (2) the amount, volume, and geographic extent of sales of goods or services offered under the mark; and (3) the extent of actual recognition of the mark. *Id.* Here, Volvo has been using the VOLVO mark continuously in connection with promotion and advertisement of Volvo products since at least the registration of the VOLVO mark more than fifty years ago in 1956; and the VOLVO mark enjoys widespread recognition in the United States. The Court therefore concludes that the mark is famous. *See Continental Airlines, Inc. v. Continentalair.com,* 1:09cv770, 2009 WL 4884534, *6 (E.D.Va. Dec. 17, 2009) (finding the Continental Airlines mark distinctive and famous because of its continuous use in interstate commerce, use in advertising services, and wide recognition).

■■ The Court next finds and concludes that volvospares.com is confusingly similar to or dilutive of the VOLVO mark. In assessing whether a mark is confusingly similar, the allegedly infringing domain name does not need to be identical to the registered mark. Rather, the "dominant or salient portions" of the domain name must be sufficiently similar. *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Virginia, Inc.,* 43 F.3d 922, 936 (4th Cir. 1995). In this case, the Court finds that "Volvo" is the dominant portion of volvospares.com and that volvospares.com is therefore confusingly similar to VOLVO. *See Lone Star Steakhouse & Saloon, Inc.,* 43 F.3d at 936 (prohibiting use of name Lone Star Grill because it infringed on "Lone Star" mark). *See also Harrods Ltd. v. Sixty Internet Domain Names,* 157 F.Supp.2d 658, 677–78 (E.D.Va.2001) (holding that combining mark with "other generic or geographic terms" does not "diminish the similarity of the defendant Domain Names to the HARROD's mark" and citing a law review article for the proposition that "among the various forms of cybersquatting is the registration of another's mark or name as part of a domain name, such as 'dellspareparts.com' for a business selling spare parts for Dell computers") (internal quotations omitted) *aff'd in relevant part,* 302 F.3d 214 (4th Cir. 2002); *Prime Publishers, Inc. v. Am.-Republican, Inc.,* 160 F.Supp.2d 266, 280 (D.Conn.2001) ("We do not believe the Defendant's addition of a generic or geographic term such as 'ct' is sufficient to distinguish the domain name from Plaintiff's protected mark. An internet user might reasonably assume that [ct] was added to the Plaintiff's mark by Plaintiff.").

■ The Court further finds and concludes that the disclaimer added to volvospares.com does not negate this confusion. *Green Prods. Co. v. Independence Corn By-Prods. Co.,* 992 F.Supp. 1070, 1076,

1078 (N.D.Iowa 1997) (holding that even though the domain holder did not intend to pass his products off as the mark holder's, he "did intend to pass off its domain name as though it belonged to Green Products.... [Defendant domain name] could deceptively lure potential customers onto its own turf.... [S]uch a deceptive use of competitor's trademark as a way to lure customers away from the competitor is a kind of consumer confusion"); *New York State Soc. Of Certified Public Accountants v. Eric Louis Assocs., Inc.,* 79 F.Supp.2d 331, 342 (S.D.N.Y.1999) (finding that disclaimer defense "ignores the *initial* confusion caused by defendant's use of" the infringing trademark) (emphasis in original).

 As noted above, White has not filed an answer or formally responded to Plaintiffs' Motion for Summary Judgment. He has, however, addressed the merits of Volvo's claims in two submissions, which the Court has considered despite the procedural irregularity of these filings. First, in a submission received February 12, 2010, White attaches the UDRP decision and asks the Court to consider it as evidence. Second, in a one-page submission received February 18, 2010, White notes that the registration of volvospares.com predated Plaintiffs' registration of the domain names pairing the VOLVO mark with other generic terms, such as volvoparts.com and volvoaccessories.com. These considerations do not establish a genuine issue of material fact and do not alter the Court's conclusions regarding the confusing similarity of volvospares.com to Volvo and the bad faith registration of the domain name. With respect to the UDRP decision, the Court concludes that the UDRP decision does not preclude Plaintiffs from seeking relief in this Court. *Eurotech, Inc. v. Cosmos European Travels Aktiengesellschaft,* 213 F.Supp.2d 612, 618 n. 10 (E.D.Va.2002) ("Worth noting here is that the result reached in the WIPO pro-

ceeding is neither admissible, nor entitled to any deference, with respect to the merits issues presented in this suit. Review here must be *de novo* and independent of any WIPO panel conclusion."). With respect to the timing of the registration of volvospares.com relative to other Volvo domain names, the critical inquiry is whether volvospares.com infringes the VOLVO mark, which predated volvospares.com by several decades. Having concluded that volvospares.com infringes the VOLVO mark, the timing of its registration before other referenced Volvo sponsored domain names does not negate its actionable infringement.

Volvo has established that White registered the domain name in bad faith with the intent to profit and that volvospares.com is confusingly similar to the registered mark, VOLVO.

## V. CONCLUSION

For the reasons stated herein, summary judgment is granted in favor of Plaintiffs and the domain name volvospares.com should be transferred to Volvo Trademark Holding AB.

An appropriate Order will issue.